UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAY - 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

WAYNE BRUNSILIUS,

        Plaintiff,

v.                                        Civil Action No 06-2202(RJL)

U.S. DEPARTMENT OF ENERGY et al.

        Defendant,


Plaintiff'S REQUEST MOTION

TO CONDUCT DISCOVERY UNDER RULE 56F
TO SECURE AFFIDAVITS FROM INFORMANTS
TO ANSWER SUMMARY JUDGMENT
AND REPLY TO COMPLAINT

Because this plaintiff has been unconstitutionally denied acess to the

courts of Colorado, for due process violations,           substantive and procedural

due process, and that records will show that the Jefferson County District court

lacked jurisdiction           according to Rule 52a of the Fed. R. C. P. shows no

charge, that this request is made for partial discovery to include the records from

Jefferson County District Court, Case No. 90 CR1281, in the State of Colorado,

and for medical records from the Kit Carson Correctional Facility, operated by

Correctional Corporation of America, and for this Court to Order the U.S. Marshall

to Take this plaintiff in protective custody, to allow this plaintiff the assistance

to    seek affidavits from the confidental informants who have been threatened,

and to secure the medical file from the Kit Carson Correctional Facility, who

have acted in collusion and fraud to deny all medical care, and records.

Because of violations of    ...       "The Freedom of Information 5 U.S.C.

Section 552, and to promote transparency and to ascertain the civil commission

enabling the below named agents as members of the government, Which were included

in the complaint, and for corporate fraud, and accounting fraud that the acts

have violated the Sarbanes-Oxley Act of 2002, H.R. 3763, one hundred and seventh

congress, second session, Amendment to the 1934 Securities Exchange Act

Declaration under Penalty of Perjury of Wayne Brunsilius

4.    Wayne Brunsilius, being competent to make this declaration and having personal knowledge of the matters stated therein, declare that the statements are true and correct to the best of my knowledge and belief and are based on my personal knowledge, and on information in the records and public knowledge provided this declarant by investigators to include federal Bureau of Investigation, and private investigators, declares pursuant to 28 U.S.C. section 1746.

5).That I was employed by Brunsilius Construction Company Inc. and did receive contact from the U.S. Department of Defense in Washington D.C. to investigate and provide television study at Rocky Flats Nuclear Plant which started on May 24, 1983,. which included only a contract written contract to J.W. Engineering, (Boyd, Brown, Study and Cameron), from EMC Engineering.

6)That the dissemination of this informationwould be provided the public through the following:"Rocky Mountain Peace and Justice Center"  and "Rocky Flats Citizens Advisory Board" and the three Union whose many workers were exposed by the deliberate indifference  by those who had actual knowledge of a substantial risk of serious harm and failed to respond reasonally; and the public in general who were lied to by the U.S. Department of Energy and Rockwell Int; to include but not limited to these, but also including the false criminal actions taken by the government to falsely imprison and arrest persons to conceal and suppress government involvement extends into the court system  by use of government agencies who use state governments and court systems, to include medical facilities, and state agencies, to include the Colorado Law Bar Association, as stated in complaint in collusion to cover up, deprive, and obstruct justice and the truth, which arose out of conduct, transactions or occurances.

7). That the state of Colorado through the Colorado Department of Corrections has denied all medical care and has suffered this plaintiff to experience bacterial

-2-

Spinal meningitis on four occasions, which has allowed hypocalcemia, diverticul-
itis and peritonitis all resulting from the radiation and heavy metals, and where
plaintiff has been in intensive care for sepsis, the blood poisoning form of
meningitis including bacterial spinal meningitis. Such occurances were purpose-
fuly inflicted to stop and prevent plaintiff from filing or seeking access in
the courts.

8.   Where this plaintiff tried to present to the FOIA officer, Lisa bressler
these stated conditions, and that records will show that plaintiff made a full
disclosure to the FOIA offier concerning his ability to pay, and did make a de-
claration to pay the month amount that this plaintiff was limited to, as an
assurance to pay whatever fees will be assessed and repeated the facts that the
plaintiff was indigent, but willing to pay, subject to his ability as stated.

The FOIA officer did not provide for the plaintiff the proceeure or place
for this plaintiff to make payment, or he would have made such. This fact justifies
why this plaintiff repeated his statedment that he was indigentÉ, which to the
normal person who define the limitations of his ability, but by the failures to
disclose where he could make mapment in good faith. No payment was made.

This failure to provide the proper format or procedure can be also seen
where the FOIA officer, Lisa Bressler failure to direct the plaintiff to send
a copy of the determination with the appeal. The June7, 2006 confirms that in-
sufficent process by attorney Robert B. Palmer. But the letter of June 7 2006
also shows the disposition of the Rocky Flats Project office to release records
because Rockywell Internatinal had been found to have serious flaws in their
record keeping and had deemed their data  faulty for failure to address dosimeters
worn by workers, an that the records are missing.  See Feb. 6, 2006 ARticle enclosed.

9.   The records will show that the plaintiff also requested the dosimater re-

-3-

cords with the medical records. This dosimeter was worn by the plaintiff and part of the medical evaluation and assessment, but records show that the records for the dosimeter was never sent. The original request was made in December through January of 2006, but as stated by Bressler affidavit, the release for security records was not completed by Jan. 3, 2007, by Marion Wilcox, the FOIA officer whom replaced Lisa Bressler. Let the Records also show that the medical records did not arrive until Jan. 4, 2007, but absence the dosimeter records.

10. The six to nine month estimate given by Lisa Bressler was subject to the same scrutiny and deprivation, raise suspicion concerning the records requested and the climatic departure of Bressler's job, and governed by the statement made in JUne 7, 2006, where attorney Robert B. Palmer, states that he had contacted Bressler to get the determination letter from her, but his words create the determination that he had to call her at home or chase her down to find that she was no longer employed by DOE, "that she did not believe that the people who are now performing her old job would be able to locate your determination, and they are not returning her calls". Thus provides proof of failures and refusals for records.

11. It appears that the Attorney for the Washington D.C. office of Hearings and Appeals was unable to gain records from the Rocky Flats Project Office, and that a great controversy had occured over the records that Lisa Bressler had granted. knowning that the records were incomplete and tied to a controversal case in the Colorado Courts, where the U.S. Departmnent of Energy had used its influience and power by means of money to conceal and suppress all records that had in fact allowed the state of Colorado to illegally arrest, convict, sentence and imprison this plaintiff, because of the investigation and discovery project completed by this plaintiff in May 24, 1983. Thus the government fraud created the commercial interest.

12. Because of this controversy as illustrated in the June 7, 2006 letter provides for this court the real facts by a diversity exam of those facts were the

-4-

FOIA office Bressler job was terminated because she had made a determination to grant the original request, which the Rocky Flats Project office had been informed was attached to the environmetal impact project, to investigate and inspect, and where the industral hygenist's had recorded the conditions of severe radioactive materials and heavy metals so severe that it's effect was immediate and devastating. The effects of such damages are recorded in the medical files now held by the Correctional Corporation of America, Kit Carson correctional Facility, where they refuse to allow access to these records by the Plaintiff, or provide treatment, and infact told this plaintiff that they cannot provide treatment.This is now where the plintiff is held, or was moved, because of this suit.

13. Because this plaintiff was taken from heavy metal detox, suffering from severe mercury, lead, cadmium, arsenic, manganese, and radiation, and placed in court, then placed in prison, that he declined into a comatose state. As a result of this occurance, he began to realize that his records in office which provided the names, phone numbetrs of the Washington D.C. army Colonel who had been this plaintiff's only contact, maps, and security, and led this plaintiff to believe that this plaintiff was contracted by the U.S. Department of Defense, and that E.M.C. Engineering and J.W. Williams were also their contractors. Because of this presentment by the U.S. Department of Defense, and the fact that during the pro- ject, This Colornel was the only contact this Plaintiff had, and did not during the briefing or negotigations ofthis project know that E.M.C Engineering existed. until the contract was delivered to the office of this Plaintiff just before the project was started. Because these records are not before me,the time is only approximate considering the presentment of contact by E.M.C. Engineering. This contract was made out to J.W. Williams Engineering, and at no time did the Plaintiff have a contract.

14. Because this plaintiff was told that all safety equipment would be provided, and testintg would be presented to him to assure that the conditions encountered were safe working conditions was given in statement to him by the Army: Colornel. This Plaintiff pulled off the Rocky Flats Project becaue he had not received a contract. See the lead sheet of invoices, which show the time delay, but the Colornel called the office and guaranteed that the contract would be on site upon    return. When we arrived, the U.S. Department of Energy tried to seize our equipment and no contract was presented, or work permits, or security to provide persons the access needed for this investigation. We pulled off again and was verbally threatened should we not perform this project with or without a contract, and that created the demand for records from the Industral hygenist's where on site, "one" was provide this plaintiff,one day testing when the investigation encountered severe levels of radiation, so high that the geiger counter could not record the levels. This created the demand for the stated records from the Rocky Flats Project Office from Rockwell, who was the prime contractor. That testing report also confirmed severely high levels of mercury and other heavy companion metals. Rockwell downplayed the conditions and lied to cover up severity of conditions.

15. The request for records dated February 8, 2006 was public information which had been release on January 20, 2006, in federal court in the 10th Federal District, by Judge John Kane, where attorney Louise Roselle claimed that Rocky Flats discharged containated  water for years before monitorning began and that Dow Chemical had allowed plutonium laced waste to leak into the soil for 11 year.

16. That documents produced in the case showed orders had been given to keep secret medical research, radioactive exposures, and known medical or public health hazards, if they might compromise or casue embarrassment to the Atomic Energy Commission or its contractors. This set in play a collusion, conspiracy and fraud to conceal all evidence, as illustrated in the unworkability of the Rocky Flats Project Office that had dismissed Lisa Bressler, to cover up all material evidence

-6-

relating to the long-secret evidence of dumping and burning of radioactive waste as stated by F.B.I Agent Lipsky who led the investigation of Rocky Flast Nuclear Plant in 1989, which shut the plant down for extensive safety violations and criminal acts. This was made public on January 6, 2005, most timely after this plaintiff's first request. The reason that the FOIA officer had mislead this plaintiff concerning the process and procedure to make a good faith showing in his willing to pay, was that it was also release to the public that evidence was ignored and charges not filed that Rocky Flats illegally stored radioative incinerator ash and that according to the F.B.I. agent so stated, did not file charges for the most serious crimes found, and that the Public had been denied the fact that they had been harmed, even through radioactive and hazardous waste contaiminated ground and drinking water.        Rocky Mountain New, January 6, 2005.

17. This plaintiff was not involved in the testing or investigation completed by the F.B.I, who stated that the officials could not be trusted, and the agent found evidence of tampering with monitors and date falsification in 1989 by the Energy Department, and that the burned tons of contamininated waste could not be found. This fact ties into the investigation performed by the plaintiff in the sewerage lines where extremely high levels of radiation were encountered, with heavy metals, and where the Rocky Flats Project Office, made it very clear that they were not going to cooperate even with one of their own attorneys, as illus-trated by Robert B. Palmer's letter of June 7, 2006, sighting LIsa Bressler.

18. Federal Judge John Kane on aproximately January 2006 found the U.S. Depart-ment of Energy in contempt of court for delay in turning over documents, in the Land contamination case. Recorded in Feb. 15, 2006 Rocky Mountain News.

19. This adverse disposition presented illustrates for this court that the procedure and format presented by their FOIA officer had no intentions of allowing this plaintiff to make any form of good faith showing or willingness to pay,

-7-

becasue they already knew that this plaintiff had been put in prison on put up charges to shut him up, to deny medical, to kill him as the attempt completed by the lack of treatment by the state of Colorado, to aid in the coverup of the U.S. Department of Energy, and Rockwell Internatinal, and the named and unnamed associates, contrators, or corporations involved. Records will show that this plaintiff did file for certified copy of the judgment and finding of facts that the plaintiff had to plead to according to Federal Rules of Civil Procedure, Rule 52 and Jefferson county District court could not provide such documents. So the diversity exam of the real evidence of "No Charge" show that the Jefferson County District Court did not have subject matter or personum jurisdiction over this plaintiff and that the state of Colorado by it law enforcement agents, and judicial officers have acted on an individual capacity to aid and abet Rockwell and the U.S. Department of Energy conceal, suppress and obstruct justice, by government who refused & failed to follow the U.S. Constitutional law, and has engaged in insurrection against the people of which I am one, by extortion, fraud, misrepresentation, kidnapping, and have violated their oath of office and oath of admissinn to practice law by failing to comply with ARticle II, Section 1, Title 4U.S.C. 101, and 102 of the U.S. Constitution by deprivation of rights under color of law 18 U.S.C.A. 241 and Conspiracy to deprive rights under color of law, Title 18 U.S.C.A. 242. Which is now being stated  to this federal  Judge and court in proof that the  actions or omission by the FOIA officer was directed by those who support the conspiracy and insurrection.

20.  All the records requested not only relate to the medical files, but provide proof of exposure of conditions, elements, heavy metals and radiation that confirms that Rockwell purposefully, and willfully refused to  maintain medical records or update the data subject to conditions even when found guilty of 10 environmental crimes, and five felonies ane 5 misdemeanors, and the U.S. Department of Energy

has followed the acts and omissions of Rockwell and Dow Chemical in their failure
to maintain records, has been proven by two court cases in the 10 Federal District.

21.  Because of the previous actions of The Energy Department to falsify records
and tamper with monitors, and because the dosimeters badges were not monitored to
conceal the exposure and failure to provide safety or protective  equipment or
clothing, that the additional records are needed to confirm conditions in absence
of lawful requiremeents. No claim for damages can be made without these records.

22.  Records will show that the FOIA officer Lisa Bressler failed to inform this
plaintiff that he needed to declare by  name each method used to diseminate the
information or where to make payment to show a willingness. The court can verify
that once this plaintiff was informed as to what process and value was required,
for this filing, the plaintiff made a good faith showing and initated the process
by which thiscivil actions was filed.

23.  That this plaintiff did make request for reduction of fees or waiver of fees.
But at no time did the FOIA officer request that a payment be submitted to their
office as an assurance to pay fees, but this plaintiff did provide and inform his
ability to pay, and openly stated his intent to pay. To inform this plaintiff that
if they do not receive the information from him by a date, did not declare to the
plaintiff that he was being directed to make payment as a means to prove a willing-
ness to pay. See item 7, Bressler's declaration.

24.  This plaintiff believes that this information will contribute significantly
to public understanding of government operations or activities, and magnitude of
the information to show that the government will stop at nothing to distort, per-
vert and destroy people to conceal and suppress the truth about its performance,
contracts, and criminal actions against the people, as has partially been presented.

25.  Because the U.S. Department of Energy involvement to control, corrupt, and
create the insurrection used to convict,sentence and illegally imprison this
plaintiff this commerical interest was bound by the involvement to conceal and

commit fraud, extortion and bears a foundation for the value of the information, but also the involvement of government to suppress the truth, and the deliberate indifference employed for life. The stated estimate of cost to review the information the 800 boxes of records, which had just been found in federal court to contain evidence of criminal actions, and the cost was meant to discourage this plaintiff and any prudent person, supports the conjecture that the information must hide the heinous and nefarious acts of Rockwell International, and the U.S Department of Energy. Perhaps the U.S. Department of Defense did not trust the U.S. department of Energy, although they had to know the dangers, and perils of poisons that Rockwell and the Energy Department had joined to accomplish.

26.Obviously the U.S. Department of Defense, whom this plaintiff was enployeed or believed he was working, had by their examination qualified this plaintiff as having the necessary expertise and ability to accomplish the work, even though they failed to fully inform or provide safety, and did place by deception this plaintiff and others in harms way, without consideration of life or law. As far as having the ability to disseminate the information, will be up to this federal court to provide by placing this plaintiff in protective custody of the U.S. Marshall, for the actions of the state of Colorado, who lack jurisdiction over this plaintiff. That several affidavits can be provided by confidential informants.

That this declaration of Wayne Brunsilius, ie, declarant, does here, swear, attest, affirm, declare under the oath under the penalty, that the contents of this declaration are true, correct, and certain, mot misleading and the truth and nothing but the truth as per the best of this declarant's knowledge and informed belief.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. Section 1746.

Executed on _May 2,_ 2007.

Wayne Brunsilius, Reg. 65458 Unit AB 109

-10-

DISTRICT OF COLUMBIA
FEDERAL DISTRICT COURT

---

Civil Action No 06-2202 (RJL)

---

WAYNE C. BRUNSILIUS,
    Plaintiff

   v.

UNITED STATES DEPARTMENT OF ENERGY
AND THE State of Colorado
    Defendant

---

VIOLATION OF CIVIL RIGHTS PURSUANT TO

FREEDOM OF INFORMATION ACT AND PRIVACY ACT

5, U.S.C. Section 552  AND Title 42
U.S.C.A. § 1997

---

COMES NOW, Wayne C. Brunsilius Pro-Se, respectfully moves this honorable

court pursuant to violations of Privacy Act, 5 U.S.C., Section 552 by the U.S.

Department of Energy, who has acted by collusion with the State of Colorado,

to include but not limited to the University of Colorado Hospital, The Colorado

Department of Puplic Health and Environment - Hazardous Materials & Waste Manage-

ment Division, The Colorado Department of Corrections, and the Jefferson County

District Court, the U.S. Department of Defense, and the U.S. Army, who have acted

directly or indirectly by agreement or by deprivating records, directed by con -

tract by environmental impact study and investigation, resulting from such study

in May 24, 1983, did by actions between named and unnamed persons to deceive,

deprive, and obstruct lawful means for the accomplishment of an unlawful conspiracy

for fraudulent and deceitful purpose.

    1). On November 16, 2005 the Plaintiff made request for medical records to

include radiological records from the U.S. Department of Energy, Rocky Flats office,

12101 Ariport Way, Unit A, Broomfield, Colorado pursuant to the Freedom of Information

5, U.S.C, Subsection 552 and the Privacy Act, 5 U.S.C. Section 552a. On December 28, 2005, the Plaintiff made second request for records to Lisa Bressler, the U.S. Depart. of Energy (FOIF) at the Rocky Flats Project Office, which included a request for radiology testing records to include radio-istope testing results completed on site in 1983, to include medical memo's, doctors notes, exrays, nurses notes, lab reports, toxicology reports for the above stated plaintiff. This request provided the U.S. Department of Energy the starting date of the project, May 24, 1983, in addition to the date of birth, and social security number on the first request, as well as EMC Engineering, one principal contractor in the project completed at the Rocky Flats Nuclear Plant, for the environmental study and investigation.

2). On January 11, 2006, Lisa A. Bressler, FOIF, answered    request for records and assigned Control Number PA06-001. providing Phone number of (303) 966-2322, and that the request would take 6 to 9 months to complete. On January 18, 2006, sent by certified mailing, the FOIF Lisa Bressler provided the name of Mr. Frazer LOckhart, manager for the Rocky Flats Project Office, U.S. Depart. of Energy, was notified of the PLaintiff's request for records, and re-assigned Control Number FR06-002.

3). On January 19, 2006, the plaintiff notifiied the U.S. Department of Energy, Rocky Flats Offie, in reference to all certified mailing being sent to Plaintiff, certified had been opened by others, and that plaintiff could notconfirm the contents and requested photo-copy of last letter to confirm certified mailing. On March 18, 2006, a complaint was filed with the Post Master at Sterling Colorado for opening legal mail. The Post Master took no action against the State of Colorado for opening legal mail, sent certified.

4). On February 8, 2006, the plaintiff filed an additional request for information under the Freedom of Informatin Act, 5. U.S.C. Section 552, resulting from the pend- ing Federal Law suit        in the 10th federal District court, Federal Judge, John Kane, concerning the "land Containation", This request for records included "Industral Hygienst" testing records completed during the completion of the Envirnomental In- vestigation and discovery for the damages resulting from the illegal dumping of

-2-

of radioactive waste being burned in incinerator and the radioactive ash being
dumped into the sewerage lines. The February 8, 2006 request confirmed facts
found in the "Land Contamination Case" before the 10th Federal District Court.
that confirmed that orders were given to keep secret,(1) medical records, (b)
radioactive exposures, (3) known medical or public health hazards, associated
with the operations of Rocky Flats Nuclear Plant, under the operation of "Rockwell
International Corporation" and Dow Chemical", who operated Rocky Flats from the
opening of the plant to 1989, When it was shut down.

5).    The request although not limited, was    , precise in dates May 24, 1983 to
the plaintiff, and the scope of the request did define and limit the information,
requested to the orders given to keep secret all medical records, radioactive ex-
posures, and known medical or public health hazards, refl ected and assocated with
the operations of the Rocky Flats Nuclear Plant, and the Contract for Environmental
Damages and impact study which began on May 24, 1983. The requested information was
used in and confirmed by the Land Contamination suit in the Tenth 10th Federal
district Court, which had settled by ruling of the jury.

6).    In addition to this request for medical records, radioactive exposures, and
known medical or public health hazards, the plaintiff also requested copies of all
testing and laboratory testing completed by INdustrial Hygienst, who performed the
testing during and the entire environmental impact study and investigation, per-
forming ambient air testing, radiation levels testing, samples from the collected
influences from the sewerage lines,. This eleven person team was to provide the
testing for safety and monitoring of all elements for the protection and safety of
the investigation team. On several occasions severe radiation was encountered,
where two geiger counters were used to confirm the severity and accuracy of the
first geiger counter. Those testing results confirmed radiation in excess of 60 rads
or 30 rems, and the entire plant went into red alert, and shut down the project.

-3-

Each time the project was shut down, Rockwell International would cover up and conceal the truth and damages encountered, and provided no safety equipment to protect the workers and team performing the environmental impact study.

7). This request also included testing completed by the Colorado State Health and Environmental and hazardous material and Waste Management, for reports required by law to be conducted by the State of Colorado in the Sewerage plant, by Waste Management Division at 4300 Cherry Creek Drive South, Denver, Colorado 80246.

By the February 8, 2006 request for records, the plaintiff made clear that the May 24, 1983 Environmental impact project, conducted by E.M.C. Engineering, and J.W. Williams Engineering, performed in the sewerage system of Rocky Flats Nuclear Plant was the target of information requested , was performed at the request of the U.S. Department of Defense who had initiated and secured the contrators to perform the impact study at the Rocky Flats Plaint. The U.S. Department of Defense, working through the U.S. Army, had to know that Rockwell International was buring hazardous materials and dumping them into the Sewerage, which was proven by Rockwells acts on site to conceal, and suppress all the testing performed by the Industrial Hygienst during the investigation and inspection. Thus the U.S. Department of Defense also placed the plaintiff and his team in harms way by not providing the protective clothing and testing results taken on site to protect the safety of the investi- gation team. This refusal and failure to provide test results on site, provides the emements for deceit, and deception by the state of Colorado, and the U.S. De- partment of Energy and Rockwell International, to employ fraud and the U.S. Depart- ment of Defense willfully initated this project under false pretense, knowning the U.S. Department of energy was violating environmental and committing criminal acts.

8). After the March 9, 2006 letter from the Freedom of Information office, Lisa

-4-

Bressler, who detailed that the information requested would take an estimated $240,000.00 dollars to search, not counting copy cost, and that 800 boxes of files were involved in the "Land Contamination Case", made a request for the plaintiff to narrow the scope of request. See attached exhibit March 09, 2006 Exhibit VII.

On March 20, 2006, the plaintiff made notice that mail fraud was committed, and acknowledged the deadline set by the Rocky Flats Project office. The plaintiff also presented clarification of request and ability to pay, and made petition for records and request a wavier of fees or reduction according to regulation 10 SFR 1004.9(a). The plaintiff also provided the Rocky Flats Project office facts he had been severe mercury and other heavy metals poisoned, and radiation poisoned from the work and investigation performed at Rocky Flats Nuclear Plant, and that the State of Colorado had committed fraud, and extorion, and had obstructed justice, in concealing the plaintiff's health condition to prevent the plaintiff from test- ifying before the grand jury, who convened in 1989 to 1992, after the F.B.I had initiated their early morning raid of the Rocky Flats Nuclear PLant in 1989, which shut down the plant for environmental violations and criminal acts.

9).    On April 25, 2006, by certified mailing from the Rocky Flats Project Office the FOIF officer, Lisa Bressler, through  Manager Frazer Lockhart, had granted the November 14, 2005 request and by March 9, 2006 letter requesting additional information for a fee wavier determination; and the March 20, 2006 letter. The granted request was being processed as a Privacy Act of 1974 request and was assign- ed control number PA06-001. Would be in process and there will be no charge for these records. See attached Exhibit April 25, 2006, exhibit III.

As stated in letter, "In Accordance with 10 Code of Federal Regulations, Section 1004.9(a)(8), the Department of Energy may furnish documents without charge if disclosure of information is in the public interest because it is likely to con- tribute significantly to public understanding of the operations or activities of the government and disclosre of the information is not primarily in the commerical

Interest of the requester." The certified letter granted medical records and radiological records, but denied the March 9, 2006 request for Industral Hygienst testing and records, and the Land contamination records where orders were given to keep secret all medical records, radioactive exposures, and known medical and public health hazards; and all testing performed by the State of Colorado State Health and Environmental, Hazardous Material and Waste management testing and reports. This information is relevant to the claims of many workers at the R.F. Plant.

The request also denied all studies and testing performed by the Colorado University Hospital, which was under contract with the U.S. Department of Energy, where Dr. John Cobb, a professor of preventive medicine at the Colorado University medical school was contracted to do research on the effects of plutonium on human tissue. See attached March 20, 2006 letter exhibit.[II]

The april 25, 2006 letter granting medical records so stated, also provided the appeal process and the determination was made that the plaintiff had not agreed to pay fees, this request, Control Number FR06-002 is hereby closed.

9). On May 17, 2006 the plaintiff filed his appeal to the U.S. Department of Energy, 1000 Independence Ave. SW, to the office of hearings and appeals. See attached letter of May 17, 2006, exhibit. This appeal also stated that the plaintiff had been incarcerated since May 29, 1991, and refuted the fact that he had refused to pay for records, was subject to his limitations and restrictions of being incarcerated. That his request was made pursuant to the Energy Employees Occupational Illness Compensation Act, under Title 42, Ch 84, Subchapter XVI, Part A, findings — The congress finds the following... (5) which established on October 28, 2004, Part D, Now Part E of the Act.

The denial of records based on the refusal to pay because the plaintiff was incarcerted was not within the Workings of "Good Faith performance" and in fact

-6-

sets in play the "Frustration of Purposes doctrine" to apply, the non-occurance
of the supervening event must have been a basic assumption of the agreement. There-
fore the FOIF Lisa Bressler, being uninformed of stated "Clssified" contract the
inadvertent ruling was without knowledge of the formal intent and purpose, and
would be informative to the public. This Environmental IMpact Study was classified
and initiated by the U.S. Department of Defense, whose operational control of the
Rocky Flats Nuclear Plant was in question concerning environmental crimes and crim-
inal acts committed by Rockwell International and the U.S. Department of Energy.
See letter of May 17, 2006, exhibit of appeal to U.S. Department of Energy in
Washington D.C.

10).  On June 7, 2006, see attached letter from Department of Energy, Attorney,
Robert B. Palmer, stating that the plaintiff had not provided a copy of the deter-
mination with the appeal. 10 C.F.R. Section 1004.8.  Please notice that the FOIF
officer, Lisa Bressler did not state that the plaintiff needed to provide a copy
of the determination. for the appeal. Exhibit IV

     Also notice that the letter of June 7, 2006 from Attorney Robert B. Palmer,
also confirms that the plaintiff is incarcerated at the Sterling Correctional Facil-
ity, and that Lisa Bressler no longer is employed by the DOE,"and that she did not
believe that the people who are now performing her old job would be able to locate
the determination, and that they are not returning her calls."

11).  On June 14, 2006, See attached letter to the U.S. Department of Energy, to
attorney Robert B. Palmer, Case Number TRA-0163, providing the determination resulted
because the FOIF neglected and failed to to direct the proper format for such appeal.

     Attorney Palmer also stated that he did not know when he would be able to
obtain the determination, and by the loss of FOIF LIsa Bressler's employment, and
the statement, that the people performing her old job would not be able to locate

-7-

the determination, showed a violation in the Privacy Act to maintain records.
Thus on June 21, 2006, the plaintiff sent a letter, see attached, filing violation
of the "Privacy Act, 5 U.S.C. Section 552 (a)(e)(5) and (g)(1)(c) by failing to
maintain accurate records. So stated in letter, also giving notice of civil action
if any agency fails to maintain any records .

The letter of June 21, 2006 also assumes that all fairness for appeal has
been prejudiced by the open discrimination and gross neligence by Rockwell Inter-
national and the U.S. Department of Energy, who has acted with the State of Colorado
to conceal  and suppress all records. This action by the U.S. Department of Energy
and the State of Colorado has violated their oath of office, and the actions by the
U.S. Department of Energy, attorneys and public officals have also violated their
oath of office, and Article II, Section 1, Title 4 U.S.C.A. 101  and 102, by re-
quiring to report the afore mentioned crimes pursuant to Title 28 U.S.C., Section 1343
and Title U.S.C.A., Section 4, who ever having knowledge of the actual commission
of a felony cognizable by a court of the United States, conceals, and does not as
soon as possible make know the same to some judge or other person in civil or milit-
ary authority under the United States is guilty of the crime of misprison of Felony,
Title 18 U.S.C.A. Section 4.   The plaintiff requested that an affidavit be taken
from LIsa Bressler under the oath of perjury pursuant to Title 28 U.S.C.A., Section
1746, and be provided this plaintiff for appeal of records in violation of Privacy
Act, for purposes of Conspiracy against rights of citizens, Title 18 U.S.C. Section
241 and Deprivation of rights under color of law, Title 18 U.S.C. Section 242.

Because the U.S. Department of Defense, the U.S. Army, from the Pentagon
had contacted the plaintiff, and provided the plaintiff with classified drawnings,
and maps and had failed and refused to fully inform,and provide safety, had placed
the plaintiff in severe heavy metals poisoning and radiation levels known to create

-8-

known medical or public health hazards and damages to, including death to the plaintiff, by misrepresentation of known facts and findings, did create or aid in the creation of conspiracy to commit fraud, See Jewish Center of Sussex County v. Whale, 86 J.J. 619 423, A2d 521, 524.

These violations of the Fiduciary responsibility by United States Constitutional mandate, demand you, or officials of the State of Colorado, or the Officers of the U.S. army, or officals of the U.S.  Department of Energy to make notice of the fraudulent acts, and as federal officers, or agents of the court, are bound to report due process violations of law. See United States v. Kizenski, 877, F. 210, 215 16 (2nd Cir. 1989) & 18 U.S.C. Section 1500, also known as the Jencks Act. 12).   On February 8, 2006, see attached letter and release for medical records from the Univesity of Colorado Hospital, Health Sciences Center, Nuclear Medicine, for copies of medical records for radioisotope testing and radio-densitomtry testing performed on January 8, 1997, requested by Dr. Aljilil and Tom Rose a Physician's Assistant at the Fremont Correctional Facility. See also May 8, 2006 letter to Colorado University Hospital. As exhibit, See Dr. James McCoy's April 13, 1996 report that confirms that the plaintiff was requested for testing being performed for evaluation for radioisotope exposure at Rocky Flats. See attached.

During the testing performed on January 8, 1997, two doctors openly stated before two witnesses, and the plaintiff that he had not nerves in both legs resulting from mercury and other heavy metals damages and needed to be inintensive care for the severe damages resulting from the radioisotope exposure.  On June 8, 2006 the plaintiff again provided the Colorado University Hospital with copies of medical releases, and requests for medical records subject to the two tests performed. But the PACS Adimistrator, Michael Cain, refused to provide all medical records, or Copies of the Medical request, or testing as requested.

On September 1, 2006, the plaintiff's letter, See attached, to Mr. Michael Cain, Pacs Administrator, responded to the July 12, 2006 letter, which defined

What the Colorado University Hospital sent to the plaintiff, but not what was requested or ordered to be tested as was confirmed not only by the Colorado 2006 Department of Corrections progress assessment summary, and byApril 13, 1996, Dr. James McCoy summary sheet, noting that the evaluation for radioisotope exposure was scheduled. IN addition to this are laboratory testing from the Colorado Department of Health and Environmental,Division of laborties, 8100 Lowry Blvd.   , Denver, Colorado, urinalysis completed on July 28, 1993, Lab # 478542, Collection Number 01100063537, performed by the Colorado Department of Corrections for drug security performed as random screening which confirm severe mercury and other heavy metals. On June 2, 1996, the plaintiff was sent to the University of Colorado Hospital for examination by environmental toxicology, by DR. Michael J. Kosnett  who refused to examine, test, or perform evaluation steming from Neurological examination that was performed on May 16, 1996 at the Pueble Hospital that confirmed total nerve damages in both legs resulting from the mercury, and other heavy metal poisonings. Again the neurologist was from the University of Colorado Hospital, and refused to provide his name or provide a copy of the report at the timeof the examination. This obvious pattern of misrepresentation manesfested by words and other conduct by one or another that under the circumstances, amounts to an assertion not in accordance with the facts, and untrue statements of fact, and incorrect or false representation, that which if accepted, leads the mind to an apprehension of a condition other and different from that which exist, colloqulally, it is understood to mean, a statement or action made to deceive or mislead, as amounting to legal fraud consistent of material misrepresentation of present existing or past facts, made with the knowledge of its fallacious and intention that the other party rely thereon resulting in reliance by that party to his detriment.

13).   ON September 1, 2006, the plaintiff requested the laboratory report #478542 Collection # 01100063537, performed by the Colorado Department of Corrections on

-10-

July 28, 1993, which  confirmed severe levels of mercury and other heavy metals.
This urinalysis  is in the plaintiffs  inmates work and Colorado Department of
Corrections file, but the Colorado Department of Corrections refused to give the
plaintiff a copy of the test results, or testing in 1993 or in 2006. IN 1993, Major
Linum brought the plaintiff into this office at the Fremont Correctional Facility
and stated that the urinalysis test showed severe or heavy amounts of mercury, and
that the test results were lost,  The Colorado Department of Corrections refused
to complete or perform another urinalysis on the plaintiff until 2001, knowning that
the plaintiff severe poisoning would reveal itself in the random urinalysis required
by the Colorado Department of Corrections, inclusive of the medical  department.

To date the testing results from the Colorado Department of Health and En-
vironmental has refused to provide the medical records or laboratory reports.
14).  The Colorado Department of Corrections took custody of the Plaintiff after
the May 29, 1991 Sentencing by the Jefferson county District Court, in Case Number
90CR1281, after the trial attorney Leonary Chesler # 3631 and his associate Rod
Allison # 15875 had accepted one Million dollars in bribery from the U.S. Depart-
ment of  Defense or the American Medical Association to conceal and suppress all
mercury and radiation poisoning medical records and exposures from the court in
the above stated criminal case. Upon entry to the Colorado Department of Corrections
at the Diagnostic Center on Smith Road, examination by doctors confirmed that the
plaintiff was severely poisoned andsuffering from the effects, to include kidney
problems, nerve damages, metabolic bone disease, meningitis, hypocalcemia, and
cronic candidiasis or moniliasis fungus infections, but they refused all records.

The Colorado Department of Corrections refused all treatment for the mercury
or radiation poisoning, and had medical records from 1986 that the plaintiff had
been in mercury detoxification under the care of seven doctors, and where Dr. Doell

-11-

had provided chelation therapy for removal of the mercury and heavy metals, and was also being treated for kidney damages, and the severe fungus infections that accompany the heavy metals and radiation poisoning.

15). These violation by the state of Colorado, which have acted in collusion with the U.S. Department of Energy, did deprive and violate all U.S. Constitutional rights, Privileges, or immunities as defined in 1997 (I)(B)(ii) of this title to include access to the courts, due process, liberty interest, to include his 14th Amendment rights, 6th AMendment, 5th amendment, 8th Amendment, 9th Amendment and 4th and 1st amendment as rights to a fair and impartial hearing before impartial judge, and right to have access to all case evidence and the right not to be tortured by the state of Colorado, by officers, employees, or agents of the State of colorado , the judicial officers, and law enforcement agents to include attorneys, and members of the Colorado Law Bar,.

16). The Appeal filed with the U.S. Department of Energy was never answered to dateof this filing because of prejudice and fraud, and refusal to provide all medical records and Industral Hygeinst records completed by the U.S. Department of Energy during and after the completion of the investigation and environmental impact study completed at the Rocky Flats Nuclear Plant, that started on May 24, 1983.

Because of these violations of the Privacy act, 5 U.S.C. Section 552, to provide medical records and records completed, known as Industral Hygienst testing and records completed on the project and investigation in the Sewerage system, to complete the environmental impact study, which included televison study performed by the Plaintiff, during which he was severely poisoned that he seeks the stated records for purposes of making claim for damages, Also violated the Freedom of Infor.

Because the challenged information in the file was capable of being verified

-12-

the agency, the U.S. Department of Energy, did purposefully, willfully, and intentionally violate the Privacy Act, by the information verified in the 10th Federal District court, so stated, did by their actions and statement failed to maintain medical records and industral hygienst records, which conclusively confirm the violation of Section (e)(5), (g)(1)(c) and (g)(4) of the "Act. by using incorrect information in determination adverse to him, relying on DOE v. United States, 261 App. D.C. 206 Section 21 F. 2d 694, 701 (D.C. Cir. 1987).

In Stange V. United States, ARms Control and disarmament agency, 275 App. D.C. 37, 864 F.2d 859 (D.C. Cir. 1989, where violation include the use of errenous reports in denying medical records, (2) made decisions advese to him concerning custody, securty classification, etc. was violated by the State of Colorado, in collusion with the U.S. Department of Energy, in Case No. 90 CR1281, Jefferson County District court, in May 29, 1991 and since, in support of the concealment of records and material evidence controled by the U.S. Department of Energy.

Pursuant to Secton (g)(4) of the Privacy Act, 5 U.S.C. Section 552a(g)(1)(c) provides that action brought under (g)(1)(c), in what the court determines that the agency acted in a manner which was "intentional" or "Willful", the U.S. shall be liable for actual damages susstained by the individual, not less that $1,000.00, as welll as litigation cost and attorney fee's. 5 U.S.C. Section 552a(g)(4).

Pursuant to this claim, for damages and records so stated, not only against the U.S. Department of Energy, who did act in collusion with the State of Colorado, and agencies of the State, to include the University of Colorado HOspital, the Colorado Department of Corrections, and the Jefferson county District courts who did act to conceal all records, to aid in the concealment by the U.S. Depart- of Energy to conceal exposures of radiation, medical records, and health hazards so stated in the Land contamination case as confirmed by jury. in the 10th Federal District Court.

-13-

If any agency willfully or intentionally fails to maintain records in such a manner and, as a result, mades a determination adverse to an individual, it will be liable to the person for monitary damages. Privacy Act 5, U.S.C. Sections 552a(g)(1)(c) and (g)(4). See, White v. Office of personaal Management, 252 App. D.C. 104, 787 F.2d 660 (D.C. Cir. 1986), the court must determine whether standard anticipated under Section (g)(1)(c) has been meet.

Because this Claim incldues and involves a criminal case so stated, and this failure and refusal to provide records, to include medical records and Industrial Hygienst Records for purpose material evidence in district court in Jefferson County, Colorado, that the Plaintiff also invokes the Jencks act, 18 U.S.C, Section 3500, requires a large class of material to be turned over to the defense in a criminal case, and because judicial officers and law enforcement officers failed to report crimes of fraud, obstruction of justice, bribery, that the crime of imprison of felony was committed in any effort to conceal, suppress or concealment of a felony committed by another, but without such provisions concert with or subsequent assistence to the felony as would make the party concealing an accessory before and after the fact UNited States v. Peristein, C.C.A. N.J. 126 F.2d 778, 798.Stated failures violate the Freedom of Information Act,5 U.S.C. Section 552.

IN conclusion, the Plaintiff requests of this court to appoint counsel, and subject to violations of Title 42, U.S.C.A. Section 1997 and violation of the Privacy Act. as stated against State and Federal Agencies, that damages to access for their violation in keeping a system of records that must be maintained with such accuracy, relevance, time lines and completemess as to reasonably necessary to asure fairness to the individual. 5. U.S.C. Section 552a(e)(5) and that consideration for such damages consider the actual damages suffered by this plaintiff since 1991 when the state of Colorado illegally convicted this plaintiff knowning that he was severely mercury and radiation poisoned

-14-

WHEREFORE , and THEREFORE, petitioner prays for relief, premisies con-
sidered for good Constitutional cause and in good faith, showing prejudice, how-
ever remote, Walker v. United States, for enforcement power, necessary for com-
pensation for damages and records requested. Defendant will submit evidence at hearing.

Respectfully Submitted,

*Wayne Brunsilius*

Wayne Brunsilius
Reg. # 65458, Unit 31
12101 Hwy 61, P.O. Box 6000
Sterling, Colorado 80751-6000


                    CERTIFICATION OF SERVICE

I Wayne Brunsilius have on this _)) day of November 2006, placed this claim
for violation of the Privacy Act and Title 42 U.S.C.A. Section 1997 into Sterling
Correctional officer's hands for U.S. mailing, first class, postage prepaid, for
the above action and cause of action, relief pursuant to claim, to Attorney General
Alberto Gonzales , Via, Solictor General Theodore Olson
950 Pennsylvania Ave., Rm 5614,
District of Columbia, Washington, D.C. 20530-0001

United States Department of Energy
1000 INdependence Ave. SW
Washington, D.C. 20585

I declare and certify under penalty of perjury of the law of the United
States of America that the above is true to the best knowledge and informed be-
lief and that a true and correct copy of this claim is presented.

*Wayne Brunsilius*

Wayne Brunsilius, Reg. # 65458, Unit 31
12101 Hwy 61, P.O. Box 6000
Sterling, Colorado 80751

Exhibits attached: I. II, III, IV, V
        In accordance with 28 U.S.C. Section 1746, I declare under penalty of perjury

that the foregoing is true and correct to the best of my knowledge.

May 2, 2007

Date

*Wayne Brunsilius*

Wayne Brunsilius, Reg No 65458
P.O. Box 2000  Unit AB 109
Burlington, Colorado 80807

                    -15-

WAYNE BRUNSILIUS                    #65458                         FCF

**DERMATOLOGY CLINIC (4-13-96):** The patient has an eczematoid plaque without elevated borders and with some scaling, but with much secondary excoriation on the left pretibial leg. He states that he has had this for five years, and it has come and gone. He tells me that it is a fungus. He saw an environmental medicine doctor previously who said he needed it biopsied. He is being evaluated for radioisotope exposure at Rocky Flats.

**IMPRESSION:** Clinical impression is pretibial eczema.

**RECOMMENDATION:** He is started on Temovate ointment bid. I told him it probably would need im and/or po steroids to clear; however, he said he did not want steroids as a doctor had once told him it would damage his kidneys. He is to return next clinic.

James McCoy, M.D.
Dermatology Consultant

Dict:   4-13-96
Recd:   4-17-96
Typd:   4-17-96/msb



RECEIVED
APR 29 1996

Exhibit 55

Sec.1.Trans.2. (Rev. 11/94)

## COLORADO INTER-CORRECTIONAL MEDICAL SUMMARY TRANSFER REPORT

AME: _BRUNSILIUS, WAYNE_   DATE OF BIRTH: _5/24/41_   DATE: _9/30/03_

O.C.#: _____   AKA: _____

RANSFERRED FROM: _JCSD_   TO: _DOC_

ATE OF LAST EXAMINATIONS:   (1) NURSING   _9/23/03_
                            (2) PHYSICIAN   _____
                            (3) DENTAL   _____

OSPITALIZATIONS:   YES_____ NO _✓_ IF YES, DATE OF LAST: _____

LERGIES:   YES_____ NO _✓_ IF YES, EXPLAIN: _____

PECIAL DIET:   YES_____ NO _✓_ IF YES, EXPLAIN: _____

URRENT MEDICAL/PSYCIATRIC PROBLEMS:   YES_____ NO_____ IF YES, EXPLAIN: _____

HRONIC MEDICAL/PSYCHIATRIC PROBLEMS:   YES_✓_ NO_____ IF YES, EXPLAIN: _Low Back Pain_
_candidiasis Hypothroidism Heavy metal Anti infective causing adv_
_Scoliosis Dermatitis_

URRENT MEDICATION:   YES_✓_ NO_____ IF YES, COMPLETE THE FOLLOWING

| NAME OF DRUG | DOSAGE | FREQUENCY | |
|---|---|---|---|
| Imodium | 2mg I | Bid | 9/12/03 – 10/12/03 |
| Motrin | 800 mg | PO Tid | 9/16/03  12/15/03 |

ROSS TESTING (COMPLETE THE FOLLOWING):

| TEST | DATE | RESULTS |
|---|---|---|
| V.D.R.L. | | |
| T.B. | | |
| TETANUS | | |
| OTHER | | |

COOPERATION WITH MEDICAL/PSYCHIATRIC CARE RATING:   POOR_____ GOOD _✓_ IF POOR, EXPLAIN:

_____

_____

IS FORM COMPLETED BY: _____

Signature

Jefferson County Sheriffs Department



**PRISON HEALTH SERVICES INCORPORATED**

## PROGRESS NOTES

✱ 10717

| Date/Time | Inmate's Name: BRUNSILIUS WAYNE C | D.O.B.: 5/24/14 |
|---|---|---|

6/18/2003  ① H/o Radiation Poisoning from Heavy Metal Poisoning
Hypocalcium / Peritonitis — Subnormal Resp —
H/o of Meningitis / Hypocalcium —

② Need Serum Calcium    H/o of Kidney failure —
B/P 153/82   P/68   T96   Wt 179#
Cold NOC ② Extra Blankets from Housing —
Hypocalcemia    Legs Feet Orange Hot
No Evidence of Goiter    H/o of ATAXIA due Heavy Metal
Poisoning —

Ⓐ  ① Hypocalcemia                          TSH
Heavy Metal Residue                         P₄ Serum Calcium Mag ph.
Scoliosis / Kyphosis                        BUN Creat —
                                            Thyroflar Cell Org —

CDE04145794

                        Calcium Carbonate 500mg # BID —
                        ——— Lower Then Lower Bowel ———

**EMSA** **CORRECTIONAL CARE**

INMATE NAME: Brunsilius, Wayne

I.D. NUMBER: 1702C

SAM Revoked
PROBLEM LIST 12/18/97

D.O.B.: 05-24-41

ALLERGIES: Smoke/PCN

| Date Identified | Problem No. | Chronic (Long Term) Problems | Date Resolved |
|---|---|---|---|
| | ① | ↓ Hearing | |
| 4-22-98 | 2 | hx radiation poisoning | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Temporary (Usually Self-Limiting) Problems

| Prob. No. | Problem | Date of Each Occurence | | | | | |
|---|---|---|---|---|---|---|---|
| | Scoliosis | | | | | | |
| | Osteoporosis | | | | | | |
| | Hx Angina & Atrial fib | | | | | | |
| ① | Otitis media bilat | 3/24/98 | 3/31/98 | 4/3/98 | 4/11/98 | | |
| ② | Fungus | 6/8/98 | | | | | |
| ③ | bilat ear pain | 8/12/98 | | | | | : |
| ④ | neck grinding | 8/13/98 | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Exhibit #7*

Kit Carson Correctional Center
HEALTH CARE SERVICES
MEDCIAL ALERTS

Inmate Name: *Brunsillius*
Inmate Number: *65450*

# MEDICAL ALERTS
### PLACE IN FRONT OF CHART

# CAUTION

#### This Patient Is Known To Have The Following Medical Conditions

1. *Osteoporosis 2° to mercury poisoning*
2. *Chronic Candidial infection*
3.
4.
5.
6.
7.
8.
9.
10.

# WARNING

#### This Patient Is Known To Have The Following Sensitivities

1. ALLERGIC TO: *Smoke.*
2.
3.
4.
5.
6.
7.
8.
9.
10.

MEDALERT.XLS

1

United States Department of Energy                                February 8, 2006
Rocky Flats Office]

12101 Airport, Way Unit A
Broomfiled, Colorado 80021-2583

Re: Control Number RF06-002

Dear Lisa Bressler,
        Pursuant to the Freedom of Information Act, 5 U.S.C., Subsection 552, and
the Privacy Act 5 U.S.C. § 552a, I am requesting access to the following ?
        1). Pursuant to the Federal Law suite now pending in the 10th. Federal
court concerning " Land Contamination", now before Federal District Judge John
Kane. I am requesting copies of documents that showed orders were given to Keep
Secret (A) Medical Records, (B) Radioactive Exposures, ,(C) Known medical or
public health hazards.
        (A) I am requesting copies of documents, records and orders that will con-
firm the orders to keep secret, medical research, what was researched, what the
results and effects the radiation and heavy metals poisoning and results. I am
also rquesting the medical contractor, University, and Laboratory contractors
that were used between 1970 and 1989 for the above stated requests, for the
three stated above.
        (2) I am also requesting copies ofthe Discovery and Environmental Contract
completed through E.M.C. Engineering which started on May 24, 1983. E.M.C. Engin-
eering had subcontracted with J.W. Williams, who performed the on site work. In
addition to the operational team was a testing team who took samples, completed
laboratory testing, conducted ambient air, tests, and conducted all radiative
monitoring, to include the geiger counter testing. The operations team encounter-
ed radioative conditions so severe that two geiger counters could not records
the levels. The testing team. also revealed the encountering of severe heavy metals
to include mercury, lead, arsenic, cadmium, manganese the companion metals of
Uranium. These tests were conducted in the sewerage system.
        In both Item I and 2 of this letter I am rquesting the testing, completed
to include Colorado State Health and Environmetnal hazards material reports, Lab-
ortory reports, Doctors notes, memos, nurse notes, toxicology reports, radiology
reports, field testing reports, doctors: names, hospitals, medical contractors
in operational control of the Rocky Flats inoperational control at the Rocky Flats
site during the Dow  Chemical and Rockwell International control of the plant.
        I am also requesting the reports created by Dow Chemical and Rockwell In
ternational pursuant to the Discovery Contract completed in 1983, and for the
orders given to keep secret, Medical records, radioactive exposures, and known
medical health hazards.  Please provide all orders from any person, dates and
any an all certified documents.
        This information and records requested are conducted by the "Willing Prayer"
pursuant to the order, "do not contest."
        If you deny any part of this request, Please cite each specific exemption
you think justifies the refusal to release the information and notify me of
appeal  procedures available under the law. This information for production of
documents andrecords were requested by and used by Attortnys Luise Roselle of
Cincinnati, Ohio, and Merrill Davidoff of Phiadelphia in representation of the
Land contamination suite presented in Feral Court. Thus making this informaton
public.
        I thank you for all your assistance and cooperation
Sincerely, *Wayne Brunsilius*          Wayne Brunsilius, Reg, # 65458 Unit 31
                                       12101 Hwy 61, P.O. Box 6000
                                       Sterling, Colorado 80751



**Department of Energy**



ROCKY FLATS PROJECT OFFICE
12101 AIRPORT WAY, UNIT A
BROOMFIELD, COLORADO 80021-2583

**APR 2 5 2006**

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Colorado Department of Corrections
Wayne Brunsilius
Reg. #65458, Unit 31
P. O. Box 6000, 12101 Hwy. 61
Sterling, CO 80751

Dear Mr. Brunsilius;

Please refer to your November 16, 2005 Freedom of Information Act (FOIA) request; my March 9, 2006 letter requesting additional information for a fee waiver determination; and your March 20, 2006 response letter.

Your original request dated November 16, 2005 was for medical and radiological records during your employment at Rocky Flats. That request is being processed as a Privacy Act of 1974 request and was assigned control number PA06-001. This request is in process and there will be no charge for these records.

In accordance with 10 Code of Federal Regulations (CFR), Section 1004.9(a)(8), the Department of Energy (DOE) may furnish documents without charge if disclosure of information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and disclosure of the information is not primarily in the commercial interest of the requester.

In your March 20, 2006 letter, you requested that all fees be waived. 10 CFR Section 1004.9(a)(8) sets forth two basic requirements, both of which must be satisfied before fees will be waived or reduced. After review, I have determined that a waiver of fees cannot be granted. This decision is based on the fact that the informative value of the requested documents would not contribute significantly to the public understanding of government operations or activities. The general public would not benefit and the documents would be uninformative. Moreover, we have been unable to determine whether you have the necessary expertise in the subject area, ability and intention to disseminate the information to the general public and furthermore, you have not addressed the basic requirements mandated for a fee waiver to be granted.

Pursuant to 10 CFR, Section 1004.9(b)(4), you are considered to be in the "All Other Requesters" category. In this category, the DOE fee guidelines allow the first 100 pages of reproduction and first two hours of search time to be furnished without charge. The requestor is responsible for narrowing the scope of the request; therefore, since you have not agreed to pay fees, this request, Control Number RF06-002 is hereby closed.

Brunsilius                                    2

The adequacy of the Rocky Flats Project Office's decision may be appealed to the Director of
the Office of Hearings and Appeals, HG-1, U.S. Department of Energy, 1000 Independence
Avenue, SW, Washington, D.C. 20585. Please include a concise statement of the grounds for
the appeal and a description of the relief sought. The appeal to the Director must be made within
30 calendar days after your receipt of this letter. Your written appeal, including the envelope,
must clearly indicate that a Freedom of Information Act Appeal is being made. Should you
appeal, please send a copy of your appeal letter to me, FOIA Officer, U.S. Department of
Energy, Rocky Flats Project Office, 12101 Airport Way, Unit A, Broomfield, CO 80021-2583
and refer to Control No. RF06-002.

                              Sincerely,

                              Lisa Bressler
                              Freedom of Information Act/
                              Privacy Act Specialist

U.S. Department of Energy                                    March 20, 2006
Rocky Flats Project Office
12101 Airport Way, Unit A
Broomfield, Colorado 80021-2483


Re: March 9, 2006 Certified Mail - Control Number RF06-002
       for clarification  of request
       for medical records.(first)

Dear Lisa Bresslet,

       I received your certified letter of March 9, 2006 on March 10, 2006 With
March 27, 2006 as deadline for statment of clarification for request of infor-
mation.
       As per your letter as stated above please be informed that mail fraud has
been committed against the person confirmed by your verification of receipt of
December 27, 2005 letter by your office on January 18, 2006. Also be informed
that this person has sent certified mail to your office and as of this date has
not received return receipt. This federal violation has been reported to Post —
Master and under investigation at this time. Please be patient with the legality.
    1). Pursuant to your request for clarification. My original request was for
medical records, radiology tests, doctors notes, nurses notes, memos, relating
to my medical records.  This is my first need and request made under the Freedom
of Information Act, 5 U.S.C. Subsection 552, and the privacy Act 5 U.S.C. § 552a.
       I have been imprisoned for 15 years and make $5.00 dollars a month but al
though I am legally indigent, I am willing to make payment subject to my indig-
ency. Also please be advised that the State of Colorado has informed knowledge
and confirmation upon conviction that this person was severely poisoned with mercur
and radiation, suffering from endometriosis, peritonitis, bacterial meningitis,
kidney failure, and total loss of all nerves resulting from the mercury and other
companion heavy metals.from work at the Rocky Flats Nuclear Plant, and has in
fact kidnapped and held hostage to suppress and conceal, obstruction of justice,
and fraud on the people who worked at the Rocky Flats Nuclear Plant, such as my-
self and others.
    2). This person now request a wavier of fees or reduced fees in regulation 10
CFR 1004.9(a).
       A.This person has legal need of these records for court use, being severely
poisoned from mercury and other heavy metals and radiation working at the Rocky
Flats Plant, and Radiation exposure, and other damages that this request is made
for claim created by the U.S. Congress under Title 42, Chapter 84, Subsection
XVI, Part A.
       B). That the information will contribute to better understanding
and assist people similarly situated having worked at the plant, named Rocky Flats
the way the State of Colorado has prevented and denied all medical diagnosis
and treatment under duress, or by threats to conceal material evidence and medical
personel in the performance of their duty.
       C). The contribution to an understanding by the general public of subjects
covering worker safety, health care, and the known hazards in the work environment,
where a violation of the Privacy Act, 5 U.S.C. §552(a)(e)(5) and(g)(1)(c) and by
failure to keep accurate records, and Section 552(g)(d) and (g)(1)(A) by failing
to amend inaccurate files by the state of Colorado, and other named and unnamed,
       IN Strong v. United States Arms,control and disarmament agency, 275, App.D.C.
37; 864 F.2d 859(D.C. Cir. 1989) "Typical Privacy Act" Case . (1) Used errenous

-1-

U.S. Department of Energy
March 20, 2006
Page 2

reports in denying medical care (2) made decisions adverse to security classific-
ation jobs, and Section (g)(4) of the Privacy Act,5$ U.S.C.§552a(g)(1)(c), provides
that action brough under (g)(1)(c) in what the court determines that the agency
acted in a manner which was "intentional" or"willful". the United States shall be
liable for actual damages susstained by the individual.

The request has the existence and magnitude of a commercial interest in deal-
ing with the medical profession and agency's that have retained and bound them in
their performance of their duty to the public and interest to the private sector
of citizens attached, related or connected in like manner or resulting from con-
ditions resulting from the stated, controls and violations so stated.

IN conclusion, the interest resulting from this requested information, now
public from the damages resulting from the "Land Contamination" case in federal
court, is sufficiently large, in the abuse of State powerrand authority, and the
violation of the Oath of Office to uphold the U.S. Constitutional rights now dep-
prived from the sovereign citizen, such as myself, and others simarly situitated
having worked at the Rocky Flats Nuclear Plant.

As a results of this request for a waiver of fees, that this sovereign citizen
acting in conjunction and with advocacy present this request and would like the
department to begin processing this request while a determination is being made,
and in light of my willing to pay or make payment, and due to my indigency, that
this request for Waiver and information is requested.

Pursuant to the Mail Fraud, and "Obstruction of Justice"employed by the
State of Colorado, and in light of the fact that this person was empdoyeed and
contracted by the U.S. Department of Defense to work on the Rocky Flats Nuclear
Plant, for "Discovery and Environmental Investigation"iProject began in May 24,
1983 for the investigation or Enviromental Crimes that the Defense Department
should be informed and responsible for fees and investigation of files in poss-
ession of the kRocky Flats Office.

Please be formally informed by this letter that the first step of this re-
quest is for medical files and radiology testing completed at the Rocky Flats
Nuclear Plant on or about May 24, 1983 and there after.

The Second phase of this request will be completed subject to waiver of fees
or coverage of fees by advocacy and or the U.S. Department of Defense, in light of
the indigency of this person making this request.

Please be also informed that due to security and classification of secrecy
revealed and confirmed in the "Land Contamination case" in federal court to keep
secret medial files, and records (b) radioactive exposures, (c) known medical and
public health hazards, was employed by the U.S. Department of Defense, that the
information was not collectively directed in previously made requests, but was
provided to your office to aid and assist in the (1) first phase of this request
to find this persons, Wayne Brunsilius's medical files and records.

Please also be informed that when the files andrrecords are found that this
person also request that the F.B.I. or Federal Marshall be employed to deliver
those records to this person at the stated address below, due to the State of
Colorado judicial impedence and obstruction of justice ... fraud, misrepresent-
ation, and treason against the U.S. Constitutioan.

This request is made with the assurance to pay whatever fees will be assess-
ed in accordance with 10 CFR 1004.9 and that such fees be waived pursuant to the
jabove stated request, subject to my indigency, and the willingness to bear fees
in attachment to violations of the Privacy Act so stated above by both the State
of Colorado and Federal Agencies as stated, named and unnamed.

-2-

U.S. Department of Energy
March 20, 2006
Page 3

As per your request for full amount of the estimate of $240.000.00 thousand dollars,and that such request would prejudice the violation of the Privacy Act violations so stated, in an by actionss or inactions to prevent such release of material evidence, adding to the bias, prejudice and discrimination of the State of FColorado, inlight of the indigency of this person requesting this information.

In Consideration of due process of law and by the facts of this letter so presented for clarification of information, that this person as stated  request a waiver of fees and an began the search of medical files and records, and when the second phase of this request is requested, perhaps a better workability can be esbblished to enable your office to narrow the scope of my request, and be more specific in order to reduce costs making this second phase more reasonable for you to respond to.

This requestor assumed that subject to the information presented in federal court in the land Contamination case that the 800 boxes of files were organized resulting from past request made by attorneys for the "Land Contamination case." Please forgive my over sight in assumeing that fact.

Again, please be informed that this person has been the subject of mail fraud, and constitutional deprivation of rights to p revent the publicsfrom realizing the hazards and health or medical hazards, or allow the use of mercury poisoning in the coutts of colorado.


Respectfully Requested,

*Wayne Brunsilius* ucc 1-367

Wayne Brunsilius, Reg. # 65458, Unit 31
P.O. Box 6000, 12101 Hwy 61,
Sterling, Colorado 80751


The above signed declarant Wayne Brunsilius, is declarant, does here, swear, attest, affirm, declare under Oath under the penalty of perjury, that the contents herein are true, correct, and certain, not misleading and the truth, the whole truth and nothing but the truth as per the best of the declarent's know- ledge and informed belief.


The foregoing INstrument was acknowledged before me 2 | day of March, 2006 by Wayne Brunsilius in the County of Logan, State of Colorado.

My Commission expires 8/8/09

–3–

Notary Republic

Kenneth D. Thompson, Notary Public
State of Colorado
My Commission Expires 8/8/09

U.S. Department of Energy                          June 14, 2006
1000 Independence Ave., SW
Washington, DC 20585

Re: Case Number TFA-0163

Dear Attorney Robert B. Palmer,

    I received your June 7, 2006 letter confirming the appeal received by your
office on May 25, 2006 was deficient. Please find a copy of the April 25, 2006
Determination as requested by you.
Please also note that the FOIA officer neglected and failed to direct the proper
format for such appeal or you would have received a copy of the determination
with the appeal. As per the determination, it requested only a copy to be sent
to the FOIA Officer, U.S. department of Energy, Rocky Flats Office, 12101 Air-
port Way, Unit A, Brookfield, Co. 80021-2583, which was completed at the same
time the appeal was mailed to your office.
    I had requested the proper manner and procedure for the appeal, and this
appeal can not be considered late or untimely filed, for the consideration of
this appeal resulting from improper procedure related to this Case.

    Please find encolsed the two documents, the determination and a copy of
your letter, making such a request. This information was also submitted to
the U.S. Department of Defense and legal counsel for review.

Sincerely,

Wayne Brunsilius, Reg. # 65458, Unit 31
12101 Why 61, P.O. Box 6000
Sterling, Colorado 80751



# Department of Energy

Washington, DC 20585

**JUN - 7 2006**

Wayne Brunsilius, Reg. # 65458, Unit 31
12101 Hwy. 61, P.O. Box 6000
Sterling, CO 80751

Re: Case No. TFA-0163

Dear Mr. Brunsilius:

On May 25, 2006, the Office of Hearings and Appeals of the U.S. Department of Energy (DOE) received your Freedom of Information Act (FOIA) Appeal. The regulations governing this proceeding require that all FOIA appeals include "a copy of the letter containing the determination that is being appealed." 10 C.F.R. § 1004.8. Your submission is deficient in that it does not include a copy of this determination letter. This letter is essential to our consideration of your Appeal. Accordingly, your submission will not be considered to be officially filed until we receive a copy of the determination.

I am aware that your status as an inmate at the Sterling Correctional Facility might make it difficult for you to provide us with a copy of this document. I therefore contacted Lisa Bressler, formerly of the DOE's Rocky Flats Project Office, in an attempt to obtain the determination letter from her. She informed me that she is no longer employed by the DOE, that she did not believe that the people who are now performing her old job would be able to locate your determination, and that they are not returning her calls. Consequently, I do not know when, or if, I will be able to obtain the determination from the Office that issued it to you. I am therefore asking that you provide me with a copy of the determination. If you are unable to have a copy made, you may send me the original letter and I will copy it and have the original returned to you.

Please send the determination to me at the Office of Hearings and Appeals, Department of Energy, Washington, DC 20585, and refer to Case No. TFA-0163 in this and in any future correspondence concerning this matter.

Sincerely,

Robert B. Palmer
Staff Attorney
Office of Hearings and Appeals

U.S. Department of Energy                          June 21, 2006
1000 Independence Ave. SW
Washington D.C. 20585
Office of Hearings and Appeals

Re: Case Number TFA-0163

Attorney Robert B. Palmer,

    Pursuant to your letter of June 7, 2006 concerning statements and actions
of the U.S. Department of Energy office, Rocky Flats Office at 12101 Airport
Way, Unit A, Broomfield, Colorado being unable to locate files or failing in
their performance to locate such files has limited your ability to conduct such,
shows a "willful and "Intentional failure to main records, which as a member of
the judicial shows a showing of intention to deceive or mislead and thus pre-
judices the determination of this appeal.
    These actions violate the "Privacy Act, 5 U.S.C, Section 552 (a)(e)(5) and
(g)(1)(c) by failing to maintain accuracte records. As stated in Section 552(a)(e)
(5), provides that each agency that keeps a system of records must "Maintain all
records", with such accuracy, relvenance, timelineness, and completeness as is
reasonably necessary to assure fairness to the individual in the determination.
    Additionally, Section 552 (g)(1)(c) permits a civil action if an  agency fails
to maintain any records concerning any individual, and consequently a determination
is made or would be made adverse to the individual, 5 U.S.C. (g)(1)(c). In Section
(g)(4) provides that in any action brought under section (g)(1) in which the court
determines that the agency acted in a manner which was "intentional", or "Willful",
the United States shall be liable for actual damages sustained  by the indivivual
not less than $1,000.00 as well as litigation costs and attorney's fees. 5 U.S.C.
Section 552 (g)(4) of the act. By using the incorrect information in determination
adverse to him, relying on Department of Energy v. United States, 261 App. D.C.,
206 Section 21 F.2d 694, 701 (D.C. Cir. 1987).
    As legal counsel for the U.S. department of Energy, and by your concession
that the Rocky Flats Office for the U.S. Department of Energy has acted in violatic
of the "Privacy Act", they have also violated Federal Rules of Civil procedure,
Rule 4, that anything short of the full disclosure of all known pertinent facts is
Fraud.
    We assume that all fairness to this appeal has been prejudiced, and by the
open discrimination the determination of this appeal will be adverse with out
legal counsel to argue or present this defendant. Accordingly, all records on
chron of the U.S. Department of Energy, and by previous employ, Lisa Bressler,
the former (FOIA) officer, affidavit be created under oath of perjury pursuant
to Title 28 U.S.C.A., Section 1746, and be provided this defendant and to this
appeal for record of violation of Privacy Act" for purposes of Conspiracy against
rights of citizens, Title 18 U.S.C. Section 241 and Deprivation of Rights under
Color of law, Title 18 U.S.C. Section 242,
    Such failures by officers of the U.S. Department of Energy so stated above
has violated their oath of office, and Article II, Section 1, Title 4 U.S.C.A.
101 and 102, and require to report the aforementioned crimes pursuant to Title
28 U.S.C., Section 1343 and Title U.S.C.A., § 4, who ever having knowledge of
the actual commission of a felony cognizable by a court of the UNited States,
Conceals and does not as soon as possible make known the same to some judge or

-1-

U.S. Department of Energy
June 21, 2006
Page 2
Atty. Palmer

other person in civil or military authority under the United States is guily of the crime of misprison of felony, Title 18 U.S.C.A. § 4.

I hereby request and petition the the U.S. Defense Department be notified, who contracted me to perform the inspection and investigation of Rocky Flat Nuclear plant, in May 24, 1983, for Environmental Impact study for environmental crimes being committed by Rockwell International and by the U.S. Department of Energy where upon the F.B.I initated their investigation in 1987, and convened the Grand Jury between 1989 to 1992, where upon the U.S. Court of Appeal has reversed the 10th federal court denial of release of the jury investigation of damages to the public and environment, and this person so stated. Date of reversal June 18,06

That Depart of Defense, U.S. Armed Forces, The pentagon be notified, who retain this defendant, to provide legal counsel, to the misrepresentation and obstruction of justice committed by the state of Colorado, and conspiracy to commit fraud, See Jewish Center of Sussex County v. Whale, 86 N.J. 619 423, A2d 521, 524.

As an officer of the Court, in and for the Washington D.C., the Fiduciary Responsibility would by U.S. Constitutional law mandate you to make notice of these fraudulent acts, and as a federal officer, or agent of the court, is bound to report due process violations that occur if people fail to disclose corrupt government witnesse and other violations of the laws. See United States v. Kizenski, 877, F. 210, 215 16 (2nd. Cir.1989( (18 U.S.C. § 1500, also known as the Jencks Act.

This notice and violation of crimes, that the Provost Marshall, the Joint Chiefs of Staff, Pentagon Rm. 4E 873 be notifyed as well as the Judge Advocate General's Office be notified and such other agency's and the Federal Superior District Court in Washington D.C. that the violation of Obstruction of Justice, 18 U.S.C.A. § 1501 et seg, to include, Fraud, violation of the "Privacy Act" for purposes of treason, and extortion by the State of Colorado, to include kidnapping and being held hostage where the judicial officers and federal officers in violation of their oath of Offce to uphold the U.S. Constitution has allowed the state of Colorado violate its ratification of Statehood and allegiance to the United States Constitution mandates, whereby the State of Colorado gains authority and jurisdiction to convene a judicial court system demanded by the U.S. Constitutional formatted ARticle III courts of law as prescribed.

In addition to the loss of jurisdiction by the State of Colorado, the State of Colorado has lost it venue by the emblems its flies where upon the Courts authority and State of Colorado acts under that authority is expressed, is in violation of all United States Constitutional laws. The state of Colorado has openly violated Title 4 U.S.C.A Chapter 1,2, 3 (innocent until proven guilty) flag of peace and therein preserves the United States Constitution, by display of the fraudulent Flag as defined by Ar 840-10 United States Army Regulation, October 1, 1979 in all twenty-two judicial districts, as well as the Colordo Court of Appeals, and the Colorado State State Supreme Court. The Colorado Supreme court fails and refuses to file their own oath of Office, and refuse to hold accountable elected District Attorney': and Deputy attorney, Attorney General, and all related offices in the State to comply with the Oath requirement as stated in Article II, Section 1, Title 4 U.S.C.A Section 101 and 102. Thus the State of Colorado has lost its jurisdiction and venue and the actions of officers at the Colorado Rocky Flats Office confirm their deliberate violations of basic constitutional rights as stated, and by collusion with the State of Colorado, violate the judicial oath of office to uphold the Constitution of the United States. Adamson v. C.I.R., 745 F.2d 541, 546(9th Cir. 1984)

Pursuant to the above stated constitutional violation, and the demand placed on attorney Robert B. Palmer to give notice to civil or miliitary authority, and to the Superior District Court of Washington D.C. Federal Court. Please provide

U.S. Department of Energy
June 21, 2006
Page 3
Atty. Palmer

   this defendant with copies of all your notices to stated authorities as demanded by law so stated.

   Your failure to provide notice of crimes will have treasonably conspired and acted against the peace and security of the United States and having treasonably conspired to destroy Constitutional government in the United States.

   Pursuant to Title 28 U.S.C.A. § 1746, I declare under the penalty of perjury that the foregoing is true and correct. The Flag of the United States of America, Title 4 U.S.C., 1, pursuant to Presidental Executive Order # 10834 (Aug. 25, 1959) hereafter demands the American Flag of Peace be flown whereby jurisdiction and Fiduciary of power and authority reside. The failure to present such is a desecrate flag and creates a foreign state.

   The Undersigned Declarant, WAYNE BRUNSILIUS, (c) ie, delarant, does herewith swear, attest, affirm, declare under oath under the penalty of perjury pursuant to Title 28 U.S.C.A. § 1746 that the Declarant executes this reservation  of right with sincere intent, that Declarant can completely state the matter set forth herei that contents are true and correct, complete, and certain, not misleading and the truth and nothing but the truth as per the best of declarant, knowledge and understanding.

   The foregoing Instrument was acknowledged before me  this _20_ day of _June_ 2006, by Wayne Brunsilius, in the county of Logan, State of Colorado.

My Commission Expires _8|8|06_

_Wayne S. Bashaw_
Wayne Brunsilius, Reg. # 65458, Unit 31
12101 Hwy 61, P.O. Box 6000
Sterling, Colorado  80751


CC:
F.B.I - Public Corruption, Washington D.C.
Atten Mr. Anderson

-3-



## Department of Energy

ROCKY FLATS PROJECT OFFICE
12101 AIRPORT WAY, UNIT A
BROOMFIELD, COLORADO 80021-2583

### MAR 0 9 2006

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Colorado Department of Corrections
Wayne Brunsilius
Reg. #65458, Unit 31
12101 Hwy. 61
Sterling, CO  80751

Dear Mr. Brunsilius;

This is in further response to your request for information dated December 27, 2005, that was received in our office on January 18, 2006. You submitted the request under the Freedom of Information Act (FOIA), 5 U.S.C. 552. You asked for the following:

1. Contract number for E.M.C. Engineering and the contract name and number of the Department of Energy (DOE) contract with Rockwell International.
2. The laboratory or testing company or contractor and contract number who performed all on site testing for influences, heavy metals and radiation encountered in manholes, where samples were taken, and included ambient air and chemical tests, to include the names of technicians, chemists, doctors, all reports, lab reports, memos, doctor notes, radiology reports, and toxicology reports. The name of the contractors' addresses that resulted for all tests completed on site by the laboratory from these methods.
3. The name and address of the plant colonel who was in charge of Rocky Flats Nuclear Plant in May 1983 to 1985.
4. All reports, contractors, lab and chemical reports held by and controlled by Rockwell International and US DOE pursuant to this discovery contract.
5. Any and all reports, the names of people who worked at the Sewage Plant in May 1983 to 1985 at the Rocky Flats Nuclear Plant, to include chemical testing for heavy metals, radiation levels of the influence, debris, ground, ambient air, water, to include the name of the laboratory, tests, reports, notes, memos, toxicology reports and plant reports required by the Colorado Department of Public Health for this contract period.

Subsequently, in a letter dated February 8, 2006, which was received in this office on February 15, 2006, you expanded the scope of your original request to include:

(1) Copies of documents that showed orders were given to keep secret (A) medical records, (B) radioactive Exposures (C) known medical or public health hazards.
(A) Copies of documents, records and orders that will confirm the orders to keep secret, medical research, what was researched, what the results and effects the radiation and heavy metals poisoning, also the medical contractor, University, and Laboratory contractors that were used between 1970 and 1989 for the above stated requests for (A), (B), and (C) above.
(2) Copies of the Discovery and Environmental Contract completed through E.M.C. Engineering which started May 24, 1983.

Brunsilius                                    2

You stated that in items (1) and (2) of this letter you would like the test results completed to include Colorado State Health and Environmental hazard material reports, laboratory reports, doctors notes, memos, nurse notes, toxicology reports, radiology reports, field testing reports, doctors names, hospitals, medical contractors in operational control of the Rocky Flats site during the Dow Chemical and Rockwell International control of the plant.

The request and its addendum have not been controlled as a FOIA request and assigned to an office to process because it does not address the requirements of a proper FOIA request as stated at Title 10, Code of Federal Regulations (CFR), Section 1004.4.

The DOE regulation that implements the FOIA provides at 10 CFR 1004.4(e), that a request shall include (1) an assurance to pay whatever fees will be assessed in accordance with 10 CFR 1004.9, (2) an assurance to pay those fees not exceeding some specified dollar amount, or (3) a request for a waiver or reduction of fees. The regulation further states that no request will be deemed to have been received until (1) some valid assurance of willingness to bear fees anticipated to be associated with the processing of the request, or (2) a specific request of a waiver or reduction of fees has been stated.

Your letter did not state a willingness to pay fees. Please submit in writing to this office your assurance to pay fees or an amount you are willing to pay to process the request. You should provide this statement to this office by March 27, 2006. If we have not received the information from you by this date, we will consider your request withdrawn and no further action will be taken.

If you plan to request a waiver of fees, the FOIA provides, at 10 CFR 1004.9(a)(8), that "the DOE will furnish documents without charge or at reduced charges if disclosure of the information is in the public interest because (1) it is likely to contribute significantly to public understanding of the operations or activities of the government, and (2) disclosure is not primarily in the commercial interest of the requester."

The DOE has implemented this statutory standard for fee waivers or reduced fees in its FOIA regulation at 10 CFR 1004.9(a). The regulation sets forth the following factors that are considered by the agency in applying the criteria:

(1)    The subject of the request: Whether the subject of the requested records concerns "the operations or activities of the government;"

(2)    The informative value of the information to be disclosed: Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3)    The contribution to an understanding by the general public of the subject likely to result from disclosure;

(4)    The significance of the contribution to public understanding: Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities;

Brunsilius                                          3

(5)    The existence and magnitude of a commercial interest: Whether the requester has a
       commercial interest that would be furthered by the requested disclosure; and, if so

(6)    The primary interest in disclosure: Whether the magnitude of the identified commercial
       interest of the requester is sufficiently large, in comparison with the public interest in
       disclosure, that disclosure is "primarily in the commercial interest of the requester."

This criteria must be addressed in order for this office to make a determination to grant or deny
the waiver or reduction of fees. In addition, if you would like the Department to begin
processing of your request while a determination is being made, please provide an assurance to
pay fees in the event your request for a waiver is denied.

For your information, the request as written encompasses basically all documents that the agency
retained on the Land Contamination case. This consists of approximately 800 boxes of material.
We estimate that it would take approximately 1000 hours to search these boxes for the
responsive information. The search time would be at a rate of $40.00 per hour. We have
estimated that it would take approximately 2000 hours to review the information if located. The
review would be at a rate of $100.00 per hour.

This amounts to an initial estimated cost of $240,000.00 for just the search and review. This
does not include duplication costs which would be billed at five cents per page.

If you would like to narrow the scope of your request to more specific in order to reduce costs
make your request more reasonable for us to respond to

In accordance with 10 CFR 1004.9(a)(7) if the DOE determines or estimates that the fees to be
assessed under this section may amount to more than $25.00, the requester will be informed of
the estimated amount of fees. Further, at 10 CFR 1004.9(b)(8)(i) if the DOE estimates or
determines that allowable charges that a requester may be required to pay are likely to exceed
$250.00 the Department can require an advance payment of an amount up to the full estimated
charges in the case of a requester with no history of payment.

Since you have no history of payment at the Department you would be required to remit payment
in the full amount of the estimate in order for the request to be processed.

If you have any questions concerning your request, please contact me at (303) 966-2322 and
refer to Control No. RF06-002.

                                   Sincerely,



                                   Lisa Bressler
                                   Freedom of Information Act/
                                   Privacy Act Specialist

PRIVACY ACT APPEAL          OFFICE OF HEARING AND APPEALS      January 16, 2007
U.S. Department of Energy
1000 Independe. Avenue, SW, ⸱⸱⸱ ⸱⸱ ⸱⸱⸱ ⸱⸱⸱
Washington, D.C. 20585

Re: PA RF 06-001 and RF 06-002


Office of Hearing and Appeals

   A) On November 16,2005 this petitioner made the first request for medical
records and information relating to his employement in May 24,1983    was
assigned control number PA RF 06-001. On December 27, 2005, I made request for
additional information and records generated during the performance of the
project we  had been retained to complete.
   B) On January 18, 2006 Control Number RFO6-002 was assigned to this request.
I made an effort to explain to the freedom of information office that we had
performed an environmental impact study and investigation, and that Industrial
Hygienst were on site monitoring, taking testing of all influences and conditions,
and performing the laboratory work and reports for all finding encountered during
the performance of this investigation and impact study.
   C) On March 9, 2006 I received an itemization and estimated cost of the search
not to include the copy cost. The Freedom of information office requested clarif-
ication of my request,     An effort to explain the need and ammendment for records
needed to include the monitoring, laboratory testing results and reports completed
by the Industrial Hygenist was presented on March 20, 2005 see attached.
   The effort to explain that I had already had testing and labortorywork to
prove that I was severely mercury and other heavy metals poisoning, and that I
had medical confirmation of Radiation poisoning, and the disease of diverticuloitis etc,
and that My request also included the records and orders that Rockwell ....had
ordered ⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱to   keep Secret I). Radioactive Exposures, (2) medical
records, and 3). known medical or public health hazards. This request was confirm-
ed in the February 8, 2006 request. See attached letter of Feb. 8, 2006
   D) In conclusion, the March 20, 2006 letter tried to explain the records needed
and why. During the performance of this project,..... the Industrial Hygenist
showed and provided me with one day record of the monitoring, laboratory testing
and report from  the previous day,which showed severe levels of heavy metals,
and high levels of radiation. It was this testing and report that prompted the
request for the complete records on February 8, 2006 and March 20, 2006.
   1). In the May 17, 2006 letter an effort was provided to show that this re-
qest for additional records was need to make claim for damages due to gross neg-
ligence to keep accurate records resulting from the "ORDERS GIVEN" as stated above.
This May 17, 2006 letter responded to the April 25,2006 denial of records, by
stating that the petitioner was unwilling to pay, (2) and that the petitioner had not
the  expertise in the subject area, ability and intention to diseminate the infor-
mation to the public (3) the decision was based on fact that the requested documents
would not contriblute to significantly to the public understanding of government
operations and activies.   This petitioners secretary had a doctorate degree in chemistry.
   2). This petitioner made the showing that his willingness to pay was very
directly subject to the ability to pay. This petitioner was very willing to pay,
but with his pay of $5.00 to $10 dollars a month now, he was limited, but willing.
This petitioners willingness to pay and his capibility to pay were not on the same
level, for the records needed. I am willingto pay any amount needed, but have no
capability to do so, and would not perjure myself making such a statement.
   3) By the "ORDERS GIVEN" as stated above, would contribute significantly to
the publics understanding of governmentoperations and activities by the records

requested to show that gross negligence and fraud was behind the directive to
show that Rockwell had engaged in practices to coverup, conceal, and suppress
all material evidence and records were to "KEEP SECRET" from the public. Thus
your denial results from the collusion and actions to keep secret all records.

4). The freedom of information officer openly stated that the petitioner
did not have the expertise in the subject area, ability and intention to dis-
eminate the information to the public. When the United States Department of
Defense calls my office and told me that they have selected me to perform a
contract, and that they have investigated me with several engineering firms,
and that I possess the equipment and abiliity to perform the project, and that
the United States Department of Defense was giving me the project, without being
on the open bidding of the Bacon Act. All I had to do was work up a figure for
the service and that the government would provide all safety equipment, testing,
security, and medical to insure and provide the protection to the personal per-
forming the investigation and inspection and environmental impact study.

I was contacted only by the United States D. Defense, and all communication
was only with the Colonel from Washington, D.C. Having worked with and for Engin-
eering firms for 25 years, and providing investigations and trouble shooting for
different projects, and working with the Health Departmet and military provided
me with the needed experience and ability confirmed by J.W. Williams Engineering,
and Boyd, Brown Studey and Cameron, from Kansas City and Denver. We were openly
told that INdustrial Hygenist would be performing testing and monitoring, and all
thelaboratory report to guaranty the protection of the personal performing the
investigation. But,it was Rockwell who over road all effort to provide protection,
and give notice to the personal, or to me, and this fact was stated to me by members
of the INdustrial Hygenist team.

5) The last of the two basic requirements, both of which must be satified
before fees can be waived was by ability to disseminate the information to the
general public. I have engaged that by filing suit in federal court.

Allof these issues were presented and resolved in the first appeal, and
denied. All letters have been presented before concerning this issue.

In Conclusion, all the records requested were presented in the "Land Con-
tamination" case in the 10th Federal District Court in Denver Colorado. confirming
the"Secret Orders" were given as stated in Item(C) above. The denial of records
from the first appeal results from the collusion with the state of Colorado to
conceal all records, testing and damages substained from employement at the Rocky
Flats Nuclear plant, and in this case in fact, the environmental impact study had
provided the proof of severe radiation and heavy metals. This request for infor-
mation can be confirmed by the Environmental IMpact study prepared by EMC Engin-
eering Company, whom we did know was involved in this project. Included inthe
project completed. Also in cluded in this IMpact study was the Television study
which was performed by this person, with the pictures and photographs that were
apart of the study.and investigation.

All the medical records were not updated subject to the conditions known on
site, and experienced during the performance of this project, and the misrepresent-
ation and purposeful attemp to mislead and deceive is an act of fraud to deny records.

Do to the failure to maintain accurate records and by failure to amend in-
accurate records or files violates Privacy Act 5 U.S.C. Section 552(a)(e)(5) and(g)(1)(c)

Respectfully Submitted.

*Wayne C. Brunsilius* (signature)   Jan 30, 2007
Wayne C. Brunsilius, Reg. No. 65458, Unit AB109
P.O. Box 6000 2000
Berlingto, Colorado 80807

−2−

```
**********************************************************************
* H&S ID442820 SSN        Last Name                                 *
* Last Name               First              Middle      From    To *
* BRUNSILIUS              W                  C           24-MAY-41   *
*                                                                   *
* Home Address                        SSN      Birth Date Sex Work Phone *
*                                     522443012 24-MAY-41  M         *
*                                     Supervisor's Name          Org.*
*                                                                   *
* Station From      To        Body TLD Wrist TLD Type Time From   To *
*                                                                   *
*                                                                   *
*                                                                   *
* H&S ID Employer Name                      Code    From     To     *
* 442820 EMC ENGINEERS INC.                 4549    19-MAY-83 02-JUL-84 *
*                                                                   *
*                                                                   *
*                                                                   *
*                                                                   *
**********************************************************************

Count: *1                                              <Replace>
```

Rocky Mountain News

# Rocky Flats case getting closer to end

## Final arguments wrapping up, jury to decide if contractors contaminated area

1/20/06

By Ann Imse
ROCKY MOUNTAIN NEWS

A federal district court jury will be asked today to decide whether two former operators of the Rocky Flats nuclear weapons plant should pay half a billion dollars in damages for contaminating the property of some 13,000 neighbors of the facility.

The class-action lawsuit, filed 16 years ago by people who owned land and homes in the area, is wrapping up with closing arguments before U.S. District Judge John Kane.

Rockwell International Corp. and Dow Chemical Co. ran the plant for decades on behalf of the Atomic Energy Commission and its successor, the Department of Energy.

The companies are accused of contaminating neighboring land with tiny but lethal amounts of plutonium.

If the companies lose, the federal government is expected to pay the damages on their behalf.

Plaintiffs include Sally Bartlett, who tried for 11 years to sell her nearby property after the public became aware of the dangers of the atomic weapons factory.

Today, subdivisions are marching closer to the boundaries of the 6,000-acre plant 16 miles northwest of downtown Denver.

The center of the site was so contaminated with plutonium and toxic chemicals that the recently completed demolition and cleanup cost $7 billion.

In closing arguments, plaintiffs' attorney Louise Roselle claimed that Rocky Flats discharged contaminated water for years before monitoring began and that Dow allowed barrels of plutonium-laced waste to leak in-

Roselle said Dow could have prevented that contaminated dirt from being blown off-site by the wind by simply placing a tarp over it — but the company chose not to do so.

She also said that documents produced in the case showed that orders had been given to keep secret medical research, radioactive exposures, and known medical or public health hazards if they might compromise or cause embarrassment to the Atomic Energy Commission or its contractors.

But attorney David Bernick, representing Dow and Rockwell, told the jury in his closing argument that the contamination off-site was minuscule and didn't harm property values.

He had on his side years of studies used by the government to argue that little contamination moved off-site and that there is almost no increased risk of cancer in neighboring areas.

Rocky Flats opponents, burned by years of secrecy and false claims about the site's cleanliness during the Cold War, do not believe those studies.

Bernick told the jury that the plaintiffs knew about Rocky Flats when they moved in. He said that any damage to property values was caused by news reports about a 1989 FBI raid on Rocky Flats, rather than any actual contamination to their land.

Bernick also attacked the plaintiffs' scientific studies.

In one case, he said, a report showing higher rates of lung cancer near the plant didn't say how long the patients actually had lived near Rocky Flats.

He denounced the study for checking only the date of diagnosis, not the date the person actually came down with cancer.

"The question is, did they get cancer while living in the area? It's not even addressed. Yet this man's opinion is proffered before you as science," he told the jury.

*imsea@RockyMountainNews.com*

*handwritten: my esse*

**WEDNESDAY, OCTOBER 12, 2005**

# Flats jury told 'lies continue'

## Plaintiffs' lawyers: Operators routinely downplayed perils

**By Karen Abbott**
ROCKY MOUNTAIN NEWS

Operators of the Rocky Flats nuclear weapons plant lied to the public about dangers at the plant for decades and still haven't come clean, lawyers for thousands of plant neighbors told a federal jury Tuesday.

"Half-truths, lies and distortions . . . continue up to and including the present," attorney Merrill Davidoff of Philadelphia said as the neighbors' $500 million class-action trial got under way 15 years after they filed their lawsuit.

The neighbors' lawyers opened their case before a courtroom full of plaintiffs and law students, who gathered to observe the trial, which is expected to last nearly to Christmas.

Besides covering up accidents, mishandling toxic waste, leaks of radioactive and other toxic materials and other errors, Davidoff said former operators Dow Chemical Co. and Rockwell International, and the U.S. Department of Energy that employed them, still refuse to account publicly for 2,600 pounds of radioactive plutonium that went missing from Rocky Flats during the 37 years the plant made nuclear weapons.

Lawyers for Dow and Rockwell will present their opening statements to the jury today.

The neighbors, who owned property within 25 square miles east of Rocky Flats when the FBI raided the plant in June 1989, contend that releases of plutonium diminished the value of their properties.

The Rocky Flats plant, built 16

Flip to TRIAL on 29A

First on the stand was Dr. John Cobb, a professor of preventive medicine at the CU Medical School. At the time, Cobb was under contract with the Environmental Protection Agency to do research on the effect of plutonium on human tissue.

The most significant danger of radioactive contamination, he said, came from a 1969 incident in which oil barrels containing plutonium leaked 5,000 gallons of oil into the sand around the plant. Strong winds blew plutonium dust as far from the plant as Denver, Cobb testified.

Plutonium, which stays intact in the atmosphere for some 20,000 years, is tracked in the soil by an arcane measurement known as "disintegrations" per minute. The state soil standard for housing developments, for instance, is two disintegrations per minute, Cobb said. Under those barrels, the rate was measured at 30 million per minute. To rid the metro area of detectable amounts of plutonium in the soil, he testified, "it would mean taking up all the soil and buildings in Denver." Gasps were heard all over the courtroom.

The danger of Rocky Flats "is certainly imminent in the plutonium blowing in the wind. It was and is," Cobb said.

Bolstering that contention was Jack Dorr, a longtime assistant general manager at Rocky Flats, who testified that prevailing wind conditions could drift radioactivity toward the metro area in the event of a plutonium accident at the plant. Wind direction based on continuously collected data is from the northwest to the southeast, Dorr said, admitting that if plutonium was in the air, it would blow toward Denver.

Next up was Dr. Edward Martell, a nuclear chemist with the National Center for Atmospheric Research in Boulder. For 16 years prior, Martell testified, he had been collecting and analyzing off-site soil samples around Rocky Flats and was the first to do so.

"I am strongly convinced the most potent carcinogen from the point of view of producing chromosome damage is the insoluble alpha-emitting particle" such as plutonium, he said.

He sampled the first centimeter of surface soil, beginning one mile from the plant fence and moving farther away. Among other things, his study found that the soil along Indiana Street southeast of the plant measured radioactivity 250 times higher than the normal fallout level present in the soil from worldwide weapons testing.

I probably should mention at this point that a 10-year study by the Colo-

Flip to REUTEMAN on 5C

# Salazar introduces bill to help ailing Rocky Flats workers

**By Laura Frank**
ROCKY MOUNTAIN NEWS

Colorado's Cold War bomb makers would have an easier time getting compensation for work-related illnesses under a bill introduced by U.S. Sen. Ken Salazar, who accused the government of "foot-dragging, obstruction and neglect" in the matter.

Salazar's legislation, which mirrors bills introduced by Congressmen Mark Udall and Ed Perlmutter, both Colorado Democrats, would essentially cut the red tape that has denied or delayed benefits to many workers at Rocky Flats.

"Across five decades, the patriotic men and women of Rocky Flats served their country producing plutonium, one of the most dangerous substances in the world, and crafting it into the triggers for America's nuclear arsenal," Salazar said in a written statement.

"Washington owes them an enormous debt of gratitude. But instead, it has shown them the back of its hand."

Both Salazar and Udall have introduced similar legislation in the past. Both bills died. But this year, Rocky Flats worker advocate Terrie Barrie hopes things might be different.

"It would be so wonderful" to have Congress take action, said Barrie, whose husband George, a former Flats mechanic, has documented plutonium exposure and suffers numerous ailments.

He and scores of other workers who have cancers and other ailments they believe are linked to on-the-job exposures have been trying to get medical and financial help for years.

In 2000, after decades of denial, the federal government for the first time acknowledged nuclear weapons workers across the nation had been harmed by contact with plutonium, chemicals and other toxic and radioactive substances.

Congress set up a compensation program for workers with certain ailments, agreeing to pay $150,000 plus medical costs to those who qualify.

But since then, many Rocky Flats workers have found their exposure records are missing or inaccurate. As a result, documenting their exposures — one requirement of the compensation program — has proved to be a nearly impossible hurdle.

Two years ago, the union representing the workers asked the federal government to declare the Rocky Flats workers part of a "special exposure cohort," which means they wouldn't have to prove their individual exposures. Instead, it would be assumed that any worker in a certain area at a certain time would have been dangerously exposed and therefore compensated.

A petition for such status is among 14 pending before the U.S. Department of Health and Human Services.

Ten other weapons sites have received that designation because their exposure records were not reliable enough.

Determining if the Rocky Flats records were reliable enough to reconstruct workers' toxic doses — a process that was supposed to take a matter of months — has dragged on for two years with no decision.

The legislation in both the House and Senate would grant that "special exposure cohort" status to Rocky Flats.

# Review exposes Flats data as faulty

## Union petition claims dosage calculations can't be estimated

**By Ann Imse**
ROCKY MOUNTAIN NEWS

Serious flaws exist in one of the standards used to determine whether former Rocky Flats workers with cancer were sickened by dangerous levels of radiation at the nuclear weapons plant, an official review found.

The review, ordered by the Advisory Board on Radiation and Worker Health, details 21 problems with the National Institute for Occupational Safety and Health report that currently calculates levels of worker exposure.

Rocky Flats Steelworkers' Union leader Tony DeMaiori said the review is more ammunition for a union petition alleging that contamination records at the plant are so inaccurate that workers can't prove radiation caused their illnesses.

The accuracy of the Rocky Flats "site profile" is vital because it is used by NIOSH to determine if a radiation dose was high enough to cause the cancer and thus qualify the worker for federal medical care and other compensation.

Larry Elliot, who runs the dose reconstruction program for NIOSH, said his agency welcomes the review and has agreed to address many of its criticisms.

The site profile is based on everyday operations at Rocky Flats and is used to estimate exposures when dosage records for an individual are unavailable.

The review, conducted by S. Cohen and Associates of Virginia, found the following deficiencies in the site profile:

■ A failure to account for higher exposures to parts of the body not near dosimeters worn on worker lapels.

■ A high number of workers' expo-

2/

# Flats: Half of sick workers denied compensation

Continued from 6A

sure monitoring records where sections were left blank.

■ Incorrect calculations used to determine the amount of plutonium lodged in the lungs.

The union petition filed with NIOSH asks for all Rocky Flats workers with 22 types of cancer listed in the compensation law to be grandfathered into the compensation program without having to prove the cause.

One problem with calculating worker exposure, cited by the review and the union petition, is an incorrect assumption on the size of plutonium particles lodged in the body — which could throw off dosages by a factor of 10.

DeMaiori cited one worker with breast cancer who was denied compensation because she had a 46 percent chance instead of 50 percent chance that the job caused her disease. Changing the dose by a factor of 10 could change the decision on whether she is eligible for aid.

In addition, the review indicates the site profile doesn't adequately count radiation from a type of plutonium heated to a high temperature. The heating makes the plutonium very insoluble, so it stays hidden, irradiating the body internally.

The union contends the effects of the heated plutonium may not show up in tests until 20 years later.

"We have a whole bunch of people with a dose who don't know it," DeMaiori said.

As a result, the union petition alleges, there's no way to know which workers were contaminated with this type of plutonium.

DeMaiori said the law requires NIOSH to act on the Rocky Flats pe-

So far, half of the more than 2,300 sick Rocky Flats workers have been denied compensation and were told their cancers and other illnesses are unrelated to years of working in some of the country's most dangerous industrial buildings at the now-demolished atomic bomb plant 16 miles northwest of downtown Denver. Hundreds more wait for responses.

To qualify for aid, the workers must prove the level and degree of their contamination.

NIOSH is collecting employee records and calculating radiation dosages on the cancer cases. Where it can't find records, it uses general contamination information collected in the Rocky Flats site profile to make radiation dosage estimates.

When the board ordered the review of the site profile, it wrote: "It has become clearer that primary sources of occupational dose data at the Department of Energy sites may be more suspect and less reliable as reviews go back further in time."

As a result, the board wrote, more employees' dosages are being merely estimated based on what the site profile reveals about general contamination at the plant.

That infuriates DeMaiori. "The law says if they can't successfully reconstruct the dose, they have to grant (the petition)," he said. Estimating "is not the intent of the law," he added.

The 21 issues raised by Cohen in its review of the site profile will be discussed in a meeting with NIOSH, Cohen and several board members on Feb. 27, said John Mauro, Cohen's project manager.

Anything unresolved will be considered by the full board at a meeting in Denver April 25-27 and could

Mauro said some of the most important issues raised by his team include the heated plutonium, the large number of blanks in the records and zeroes where the counting equipment of the time wasn't sufficiently sensitive.

In addition, one of the most basic methods used by Rocky Flats to measure contamination was off, Mauro said. The body counter measured radiation from americium leaving the body and used that figure to calculate the amount of otherwise undetectable plutonium in the body. But the ratio between americium and plutonium varies, Mauro said.

According to the review, there is also evidence that Rocky Flats routinely stored control dosimeters in contaminated locations.

The amount of background radiation on these control dosimeters was then deducted from the amounts on worker dosimeters. Mauro said one way to address this would be to not deduct the alleged background level.

Such questions about the reliability of the records is a concern for Joseph Fitzgerald, who wrote the Cohen report. Workers have said they had levels of exposure that was not recorded, he noted.

"Was there any management action that would have made the data not sound?" Fitzgerald asked.

The site profile also failed to address doses from neptunium, thorium, curium, tritium and two types of uranium, according to the review. Nor did it address contamination from "routine and episodic airborne releases" of radiation possibly inhaled by workers outdoors.

The site profile considered contamination from breathing radioactive soil blown into the air only at the worst dumping site at Rocky

## SATURDAY



# 15

### SEPT. 1984

*Luanne left for Calif. for school*

1-  226-9265

F 2

259 -     SAT., SEPT. 15     - 107

---



**EMC ENGINEERS, INC.**
(303) 988-2951
2750 S. WADSWORTH BLVD., SUITE 201
P.O. BOX 36009
DENVER, COLORADO 80236

CENTRAL BANK OF DENVER
DENVER, COLORADO 80292
23-53/1020

DM    **5640**

PAY  Sixty-Six Thousand One Hundred Seventy-six dollars----------

TO THE ORDER OF

Brunsilius Construction Company

DATE   11/15/84    AMOUNT   $66,176.00



*Rocky Mountain Peace and Justice Center*

February 27, 2006

Mr. Wayne Brunsilius
Reg. # 65458 Unit 31
Sterling Correctional Facility
P. O. Box 6000
Sterling, CO 80751

Dear Mr. Brunsilius,

I am writing on behalf of the Rocky Mountain Peace and Justice Center. We have received your letters though Christie Donner of CCJRC. LeRoy Moore sent you a letter in January, and it appears you did not receive it—our apologies for this. I have included another copy of the letter LeRoy sent. I have also included some basic information from the Department of Labor concerning their management of the Energy Employees Occupational Illness Compensation Act (EEOICA) program. I am doing some research to see if there is medical coverage or compensation for heavy metal illness through the EEOICA program or any other federal compensation program. As of today, I have not found any information suggesting that heavy metal illnesses are covered. But, I will continue to look.

There are several documents you will likely need for a claim under any of the compensation programs:

- Employment records from the DOE or DOE contractor at Rocky Flats (pay-stubs or tax returns for some or all of the years you worked at Rocky Flats would likely suffice and the IRS may be able to help recover previous years returns depending on how long ago you worked at the site.),
- Description of the type of work you did at the site and for how long,
- List of heavy metals and/or other hazardous materials you believe you were exposed to,
- Medical Records from doctors verifying that you have had harmful health effects due to exposure to heavy metals (and/or other toxins). Or stating that your illness "was as likely as not" caused by exposure to the heavy metals (and/or other toxins),
- Medical Receipts showing out-of-pocket expenses due to an illness caused by exposure.

I know that many of these records are hard to obtain, but even if you can reconstruct the information from memory, it will be that much easier to know where to look to obtain official documentation of the above.

205 Canyon Blvd.
Boulder, CO 80302

Telephone: (303) 444-6981
Fax: (303) 444-6523
www.rmpjc.org

Post Office Box 1156
Boulder, CO 80306

*A membership-supported organization*    *Member of Community Shares*
*Working for nonviolent social change since 1983* ━

I believe you stated that you were employed by Rockwell International and not the DOE. I have included an address where you might send inquiries about your past employment at Rocky Flats. Unfortunately, Rockwell International does not exist as the same entity it was during its time as contractor. Rockwell essentially became two different companies—Rockwell Collins and Rockwell Automation, Inc. I suggest you contact Rockwell Automation first, though their contact information is limited. I suggest that when you write to Rockwell Automation, you ask them to provide you with the correct contact information for someone who can help you locate records of your previous employment with Rockwell International. I have included contact information for both companies. I sent an email to Rockwell Automation last week on your behalf, but I have not yet heard back from them. If I do hear from them, I will of course pass along any information they send me.

I hope the information I have sent along with this letter will be helpful in answering some of your basic questions about the EEOICA program. There are toll-free numbers that could offer some advice in navigating all the paper work should you decide to apply for compensation under the EEOICA. I am sure that being incarcerated will make it that much harder to go through the application process. I am sorry for this. I know that using the phone is probably not the easiest way for you to communicate, so I will also try to find some addresses for you to write to for assistance.

With peace and hope,

Erin Hamby
Coordinator-Rocky Flats/ Disarmament Action Collective
Rocky Mountain Peace and Justice Center

The RMPJC
P O Box 1156
Boulder, CO 80306

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

| DATE | |
|---|---|
| 10-6-83 | |
| NUMBER | |
| WO # 9040 | |

· J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

TERMS:

| DATE | CHARGES AND CREDITS | BALANCE |
|---|---|---|
| | BALANCE FORWARD | |
| 5-24-83 | We went to Rocky Flats met with | |

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

| DATE | |
|---|---|
| 10-6-83 | |
| NUMBER | |
| WO # 9041 | |

· J. W. Williams & Associates
7887 E. Belleview- Suite 650
Englewood, Colorado  80111

TERMS:

| DATE | CHARGES AND CREDITS | BALANCE |
|---|---|---|
| | BALANCE FORWARD | |
| 5-25-83 | We began at Rocky Flats jet cleaning. | |

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

| DATE | |
|---|---|
| 10-6-83 | |
| NUMBER | |
| WO # 9042 | |

· J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

DATE
10-6-83

NUMBER
WO # 9043

Phone 922-3291  922-0911

·J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

DATE
10-6-83

NUMBER
WO # 9046

Phone 922-3291  922-0911

. J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

DATE
10-6-83

NUMBER
WO # 9059

Phone 922-3291  922-0911

·J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

DATE
10-6-83

NUMBER
WO # 9060

Phone 922-3291  922-0911

·J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 10-6-83

NUMBER WO # 9064

J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 10-6-83

NUMBER WO # 9072

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 10-6-83

NUMBER WO # 9099

J. W. Williams & Associates
7887 E. Belleview, Suite 650

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 10-6-83

NUMBER WO # 9113

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

STATEMENT

| DATE | 10-6-83 |
| NUMBER | WO # 9419 |

·J. W. Williams & Associates
7887 E. Belleview, Suite 650
Englewood, Colorado  80111

---

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

STATEMENT

| DATE | 10-6-83 |
| NUMBER | WO # 9420 |

·J. W. Williams & Assoc.
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

---

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

STATEMENT

| DATE | 10-6-83 |
| NUMBER | WO # 9421 |

· J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

---

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

STATEMENT

| DATE | 10-6-83 |
| NUMBER | WO # 9422 |

· J. W. Williams & Associates
7887 E. Belleview Suite 650
Englewood, Colorado  80111

## STATEMENT

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE
11-9-83

NUMBER
WO 9508

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

## STATEMENT

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE
11-9-83

NUMBER
WO # 9509

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

## STATEMENT

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE
11-7-83

NUMBER
WO # 9510

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 11-9-83
NUMBER WO # 9511

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 11-9-83
NUMBER WO # 9513

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

---

**STATEMENT**

**BRUNSILIUS CONSTRUCTION CO.**
7779 West 4th Avenue
LAKEWOOD, COLORADO 80226

Phone 922-3291  922-0911

DATE 11-7-83
NUMBER WO # 9514

J. W. Williams & Associates
7887 E. Belleview-Suite 650
Englewood, Colorado  80111

TERMS: